Dave Thomas ROBERSON,
II, Respondent,

v.

Trish VINCENT, Director of Revenue
for the Missouri Department of
Revenue, Appellant.

No. WD 69581.

Missouri Court of Appeals,
Western District.

June 23, 2009.

James A. Chenault, III, Esq., Jefferson City, MO, for appellant.

Dustin G. Dunklee, Esq., Versailles, MO, for respondent.

Before Division One: ALOK AHUJA, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and THOMAS H. NEWTON, Chief Judge.

HAROLD L. LOWENSTEIN, Judge.

## I. INTRODUCTION

The Director of Revenue ("the Director") appeals the judgment setting aside the suspension of the driving privileges of Dave Roberson ("Roberson"). In the sole point on appeal, the Director argues that the trial court erred in setting aside the suspension of Roberson's driving privileges because the trial court improperly excluded evidence and the record was sufficient for the Director to establish a *prima facie* case under section 302.535.[1] The judgment of the trial court is reversed, and the case is remanded.

## II. FACTS

As reflected in the records submitted at trial, at approximately 4:00 p.m. on December 11, 2006, Roberson was involved in a single car accident in Morgan County where his vehicle rolled-over after he swerved off the highway. Officer Brian Geier reported to the scene of the accident. Upon his arrival, an ambulance was already at the scene, and Roberson was receiving medical treatment for his injuries and laying on a backboard. Roberson told Geier that he was the driver of the vehicle. Geier observed that Roberson had watery and bloodshot eyes, slurred and confused speech, and a strong odor of intoxicants on his breath. Geier performed a Horizontal Gaze Nystagmus test, which also indicated, in Geier's opinion, that Roberson was intoxicated. Geier arrested Roberson for driving while intoxicated, and Roberson was then transported by helicopter to a hospital for medical treatment. Geier radioed for an officer to meet Roberson at the hospital to retrieve blood samples.

Officer Gary Gundy went to the hospital to retrieve the samples. When Gundy made contact with Roberson, he observed that Roberson's eyes were extremely bloodshot and his pupils appeared to be constricted. When asked if he had been drinking and driving, Roberson admitted that he had and further stated that he began drinking from 9:00 a.m. that morning to approximately 12:00 p.m. in celebra-

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

tion of his birthday. Gundy then performed a Horizontal Gaze Nystagmus test, but the results indicated that Roberson was not intoxicated. Gundy obtained Roberson's consent to submit to a chemical test of his blood. He directed a registered nurse, Lynette Vassholz, to draw a vial of blood, but she was unsuccessful in obtaining an amount sufficient for a sample. Gundy then directed another registered nurse, Nathan Baughman, to draw samples. Baughman successfully drew a sample and drew a second sample one hour later. Baughman was unaware of any previous attempts to draw Roberson's blood by nurse Vassholz.

Gundy prepared transmittal slips for the unsuccessful blood draw by nurse Vassholz and the two successful blood draws by nurse Baughman, and he transported the samples to the crime laboratory for analysis. Leigh Bayer, an analyst at the crime laboratory, tested and determined the blood alcohol content ("BAC") of all three samples. Her toxicology report revealed that all three samples contained a BAC over the legal limit of 0.08 %. The Director issued a notice to Roberson that his driving privileges were suspended pursuant to section 302.505. Roberson requested a trial *de novo* to contest the suspension.

At trial on March 17, 2008, the Director presented the certified records and called officers Geier and Gundy, nurse Baughman, and Leigh Bayer as witnesses to testify. The Director called Gundy to testify regarding the blood draws conducted at the hospital. He testified that the first attempt to draw blood was unsuccessful because nurse Vassholz failed to obtain a sufficient amount of blood, but nurse Baughman later obtained two sufficient samples. The Director then called Baughman, who testified that he was able to obtain two sufficient blood samples from Roberson, and during his blood draws, he used a non-alcoholic antiseptic. The court then questioned Baughman, expressing concern about the first unsuccessful blood draw by nurse Vassholz. During the court's examination, Baughman stated that he was not present during any prior attempts, and therefore, he had no knowledge of Vassholz's attempt to draw blood and was unaware of whether Vassholz used a non-alcoholic antiseptic during her attempt.

After the court examined Baughman, the Director called Leigh Bayer, the crime lab analyst, to testify about the results of Roberson's blood tests. Roberson objected to any testimony with respect the test results, arguing that the Director failed to show that a non-alcoholic antiseptic was used in the first attempted blood draw by Vassholz. In response, the Director argued that the newly amended section 577.029 RSMo Cum.Supp.2007, effective June 30, 2007, had been revised and no longer required the use of a non-alcoholic antiseptic during blood draws to admit blood test results into evidence. The court, however, sustained Roberson's objection, holding that the law in existence at the time of the blood draw applied, and the law in existence at the time of the blood draw required proof that a non-alcoholic antiseptic was used. The court reasoned that the Director failed to demonstrate nurse Vassholz used a non-alcoholic antiseptic, and because it was possible that alcohol entered Roberson's blood stream during Vassholz's unsuccessful blood draw, the statute in effect at that time was not satisfied. As a result, the court excluded all evidence of Roberson's blood test results.

At the close of the Director's evidence, the trial court found there was insufficient evidence that Roberson's BAC was 0.08 % or more, and therefore, the Director failed to meet its burden of establishing a *prima*

*facie* case. Roberson requested permission to present further evidence, but the court refused, stating that further evidence was unnecessary because the Director failed to meet its burden. The court set aside the administrative suspension and reinstated Roberson's driving privileges. The Director appeals.

### III. Standard of Review

This court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

### IV. Discussion

■ Under section 302.535, the Director had the burden of establishing a *prima facie* case for suspension of a driver's license by presenting evidence that at the time of the arrest: (1) there was probable cause for arresting Roberson's for driving under the influence; and (2) that the alcohol concentration in Roberson's blood was 0.08 % or more. *Verdoorn,* 119 S.W.3d at 545. "The 'burden of proof' is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence." *Id.* (quoting section 302.535.1). When the Director makes a *prima facie* case, the evidence "creates a presumption that the driver was intoxicated." *Id.* "The driver is then entitled to rebut the director's *prima facie* case with evidence that his blood alcohol content did not exceed the legal limit." *Id.* The rebuttal evidence should raise "a genuine issue of fact regarding the validity established by the director's *prima facie* case." *Id.* at 546.

■ The evidence established that officer Geier had probable cause to believe Roberson had been driving while intoxicated. Roberson admitted to Geier that he was the driver of the vehicle. Geier observed that Roberson displayed signs of intoxication such as watery and bloodshot eyes, slurred and confused speech, and a strong odor of intoxicants on his breath. The Gaze Nystagmus test also indicated, in Geier's opinion, that Roberson was intoxicated. This evidence was sufficient to support a finding that Geier had probable cause to believe Roberson was driving while intoxicated. *Clark v. Director of Revenue,* 132 S.W.3d 272, 275–76 (Mo.App. 2004).

■ The second element of the Director's *prima facie* case required the Director to prove that Roberson's BAC exceeded 0.08 %. The Director introduced Exhibit A, a copy of the Department of Revenue records, which included an affidavit of the custodian of records for the Department of Revenue; the Notice of Suspension/Revocation of Driving Privileges; the Alcohol Influence Report; the Toxicology Report indicating that all three blood samples had a BAC exceeding 0.08 %; the complaint and summons; the accident report of officers Geier and Gundy; and the transmittal slips for the blood draws by nurses Vassholz and Baughman.

■ Where, as here, the Director uses a blood test to prove BAC, all foundational prerequisites for its admission must be met. *Clark,* 132 S.W.3d at 276. The foundational prerequisites applicable to this case are set forth in section 577.029. *Id.* At the time of Roberson's arrest on December 11, 2006, the prerequisites for admission of blood tests into evidence under section 577.029 were: (1) that the individual who took the blood sample was a licensed physician, registered nurse, or trained medical technician; (2) that a ster-

ile needle was used; (3) that a sterile container was used; and (4) that a non-alcoholic antiseptic was used. *Id.*

However, during the time between Roberson's arrest and his trial, which occurred on March 17, 2008, the pertinent statute was amended. Effective June 30, 2007, the last line of section 577.029, which formerly read, "A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapunture," was deleted. The version of section 577.029 in effect at Roberson's trial provides:

> A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood, unless such medical personnel, in his good faith medical judgment, believes such procedure would endanger the life or health of the person in custody. Blood may be withdrawn only by such medical personnel, but such restriction shall not apply to the taking of a breath test, a saliva specimen, or a urine specimen. In withdrawing blood for the purpose of determining the alcohol content thereof, only a previously unused and sterile needle and sterile vessel shall be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law enforcement officer shall be made available to him.

RSMo Cum.Supp.2007. Under this version, the fourth foundational prerequisite for admitting a blood test, as described in *Clark*, is no longer necessary.

At trial, Roberson objected to any testimony with respect the blood test results. Roberson argued that the Director failed to show a non-alcoholic antiseptic was used in the blood draw attempts that occurred prior to nurse Baughman's successful blood draws. Roberson specifically stated, "We don't have any record that alcohol wasn't introduced inadvertently in the second test or the third test ... because we don't have the first person who drew the blood here."

In response, the Director argued that section 577.029 had been amended since Roberson's arrest and no longer required the use of a non-alcoholic antiseptic during blood draws. The court stated, "I think the law in effect at the time [of Roberson's arrest] is what I'm stuck with." The court sustained Roberson's objection and added, "I'm going to sustain the objection to [Bayer] testifying about these test results because I've got a problem in my mind about the earlier [blood draw attempts] which could, or not, have used an alcoholic astringent." Accordingly, the court excluded *all* evidence regarding the blood test results because the Director failed to demonstrate that a non-alcoholic antiseptic was used during nurse Vassholz's attempt.[2]

■ In excluding the blood test results, the trial court erroneously applied the version of section 577.029 in effect on the date of Roberson's arrest. Case law is

---

**2.** In his brief, Roberson also argues that the trial court excluded the blood test results from evidence for the additional reason that Bayer's testimony was not credible. However, this argument is based on testimony adduced from Bayer during the Director's offer of proof, which occurred *after* the court ruled on Roberson's objection to the blood test re-

sults. The record, on pages 83–84 of the transcript, reflects that the court's only basis for excluding evidence of the blood test results was that the Director presented no evidence to demonstrate a non-alcoholic antiseptic was used during the first attempts to draw blood.

clear that "[p]rocedural statutes and administrative rules apply retrospectively unless the enactment reveals contrary intent." *Blechle v. Dir. of Revenue,* 11 S.W.3d 655, 658 (Mo.App.1999) (citing *Declue v. Dir. of Revenue,* 945 S.W.2d 684, 686 (Mo.App.1997)). Section 577.029 RSMo Cum.Supp.2007, relates to the admissibility of blood test results into evidence, and as such, it is procedural and subject to retrospective application. *Declue,* 945 S.W.2d at 686. Because section 577.029 RSMo, Supp.2007, is subject to retrospective application, the trial court should have applied the version in effect at the time of Roberson's trial. Consequently, the Director was not required to demonstrate that a non-alcoholic antiseptic was used during an attempt to draw Roberson's blood, and the trial court should not have excluded Bayer's testimony with respect to the blood test results on that ground.

### V. CONCLUSION

Section 302.535 placed the burden on the Director to establish a *prima facie* case for suspension of a driver's license by presenting evidence that at the time of the arrest: (1) there was probable cause for arresting Roberson's for driving under the influence; and (2) that the alcohol concentration in Roberson's blood was 0.08 percent or more. *Verdoorn,* 119 S.W.3d at 545. After excluding Bayer's testimony regarding the blood test results, the trial court found that there was insufficient evidence that Roberson's BAC was 0.08 percent or more, and therefore, the Director failed to meet its burden of establishing a *prima facie* case for driving while intoxicated. Furthermore, the court refused Roberson's request to present further evidence to rebut the Director's evidence, stating that further evidence was unnecessary because the Director failed to meet its burden. In so doing, the trial court

prevented the Director from establishing the second element of a *prima facie* case and, in addition, prevented Roberson from "rebut[ting] the Director's *prima facie* case with evidence that his blood alcohol content did not exceed the legal limit." *Id.*

Because the trial court erroneously applied the law by excluding evidence of the blood test results on an improper basis, the judgment of the trial court is reversed. The case is remanded for further proceedings with instructions to allow the Director to establish a *prima facie* case and to permit Roberson to rebut the Director's case.

All Concur.