

# SUPREME COURT OF MISSOURI
## en banc

KRISTIN NICOLE STIERS,      )
          )
      Respondent,      )
          )
vs.              )      **No. SC94840**
          )
DIRECTOR OF REVENUE,      )
          )
      Appellant.      )

### APPEAL FROM ST. CHARLES COUNTY CIRCUIT COURT
**The Honorable Matthew E.P. Thornhill, Judge**

### *Opinion issued January 12, 2016*

The Director of Revenue appeals from the trial court's judgment excluding the results of Kristin Nicole Stiers' breath test and reinstating her driving privileges after those privileges were revoked by the Director. The trial court found the Director failed to lay a proper foundation for admission of the breath test results because the machine on which the breath test was conducted was calibrated using only one standard solution whereas tests utilizing three standard solutions of different strengths were required by 19 CSR 25-30.051, which was the relevant department of health and senior services (DHSS) regulation in effect at the time of the breath test.[1]

The Director argues that the trial court erred in excluding the results of Ms. Stiers'

---

[1] Unless otherwise indicated, statutory citations refer to RSMo 2000, updated through RSMo Supp. 2013.

breath test. This Court rejects the Director's arguments that the regulation in question was intended merely to list solutions that could be used and that this Court should infer that only one solution is required to be used in calibrating breath analyzers from the fact that only one solution is to be reported per form used. Multiple forms may be submitted. This Court finds that 19 CSR 25-30.051, titled "Breath Analyzer Calibration and Accuracy Verification Standards," sets out the standards to be employed in calibrating breath analyzers in subsection 2, which in 2013 stated, "The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values: (A) 0.10%; (B) 0.08%; and (C) 0.04%."

This Court also rejects the Director's alternative arguments that the regulation simply sets out a procedural rule governing admissibility of breath test results at trial and that revisions to the regulation that the DHSS adopted between the time of arrest in 2013 and trial in 2014 should retrospectively validate an otherwise improperly conducted calibration. Section 577.037, not a DHSS regulation, sets out the standards for admission of breath test results. The regulations governing breath tests on a properly calibrated machine serve multiple purposes, including providing a basis for suspension or revocation of a driver's license. That is true regardless of whether the driver later files an administrative appeal or seeks *de novo* review in circuit court. The standard by which the validity of that calibration is judged necessarily must remain the same from the time of the initial suspension through the time that *de novo* review is undertaken. It would be strange indeed were the law otherwise, and the initial suspension and review were undertaken under one version of a regulation but the court's *de novo* review of that

suspension were considered under a later-adopted regulation intended to correct flaws in the original regulation. The regulation in effect at the time of the breath test governs. Under this regulation, the calibration was not valid. The judgment is affirmed.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 12, 2013, Lake St. Louis Police Officer Gerald Crowley stopped Ms. Stiers' vehicle after he observed her swerving between lanes. At Officer Crowley's request, Ms. Stiers took a field sobriety test, which indicated impairment. She was placed under arrest for driving while intoxicated and taken to the Lake St. Louis Police Department. There, Ms. Stiers agreed to take a breath test on an Alco-Sensor IV (breath analyzer), which measured a .172-percent blood alcohol concentration (BAC). Officer Crowley then issued Ms. Stiers a notice of revocation of her driving privileges pursuant to section 302.520.1, which states:

> *Whenever the chemical test results* are available to the law enforcement officer while the arrested person is still in custody, and where the results *show an alcohol concentration of eight-hundredths of one percent* or more by weight of alcohol in such person's blood … *the officer,* acting on behalf of the department, *shall serve the notice of suspension* or revocation personally on the arrested person.

(Emphasis added).

Revocation of Ms. Stiers' driving privileges was stayed temporarily while she sought administrative review of the suspension under section 302.530. The suspension was upheld at the administrative hearing, and the department of revenue issued its final order revoking Ms. Stiers' driving privileges based on the results of the breath test. Ms. Stiers then timely filed a petition for a trial *de novo* in the circuit court under section

3

302.535.1.[2] Ms. Stiers' trial was held on April 10, 2014. The Director offered the results of Ms. Stiers' breath test as evidence that her BAC was above .08 percent at the time of her arrest. Ms. Stiers objected to the admission of the breath test on the ground that the breath analyzer used to administer her breath test was not calibrated in accordance with the version of 19 CSR 25-30.051.2 in effect at the time of her 2013 arrest. At that time, subsection 2 stated that "the standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values: (A) 0.10%; (B) 0.08%; and (C) 0.04%."

Because it is undisputed that the breath analyzer used in her case was calibrated using only one solution, Ms. Stiers argued that her breath test results were invalid. The trial court agreed, rejecting the Director's argument that 19 CSR 25-30.051.2 did not govern which solutions should be used and refusing to rule that, in context, the word "and" really meant "or." The trial court also rejected the Director's argument that the validity of the breath test should be determined by the emergency revision to the regulation that DHSS promulgated in 2014, shortly before trial, which required that only one solution be used to calibrate a breath analyzer. The court excluded the breath test results and found that, without them, the Director failed to meet the State's burden of providing sufficient credible evidence that Ms. Stiers drove with a BAC above .08 percent. Following an opinion by the court of appeals, this Court granted transfer. *Mo.*

---

[2] "Any person who has received a notice of suspension or revocation may make a request within fifteen days of receipt of the notice for a review of the department's determination at a hearing." *§ 302.530.1.* "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court." *§ 302.535.1.*

4

*Const. art. V, § 10.*

## II. STANDARD OF REVIEW

"[Appellate courts] review the trial court's judgment in a … license suspension or revocation case like any other court-tried civil case." *Johnson v. Dir. of Revenue, State, 411 S.W.3d 878, 881(Mo. App. 2013).* "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010).* "When facts are not contested and the issue is one of law, our review is *de novo*, and no deference is given to the trial court's determination." *Johnson, 411 S.W.3d at 881.*

Here, the Director does not contest any factual findings made by the trial court. Instead the Director alleges that either the trial court applied the wrong regulation or the trial court misinterpreted the regulation it applied. "Statutory interpretation is an issue of law that this Court reviews *de novo*." *Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2008).* "Regulations are interpreted according to the same rules as statutes." *Dep't. of Soc. Servs., Div. of Med. Servs. v. Senior Citizens Nursing Home Dist. of Ray Cnty., 224 S.W.3d 1, 9 (Mo. App. 2007).* Therefore, because this case involves the application and interpretation of a regulation, this Court reviews the trial court's decision *de novo*.

## III. THE 2013 VERSION OF 19 CSR 25-30.051 REQUIRED THAT BREATH ANALYZERS BE CALIBRATED WITH THREE SOLUTIONS

Section 577.037 requires that breath tests be performed "… in accordance with methods and standards approved by the state department of health and senior services."

These methods and standards are set out in 19 CSR 25-30.011 to 25-30.080. Regulation 19 CSR 25-30.051.2 as promulgated by DHSS at the time of Ms. Stiers' breath test stated:

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
> (A) 0.10%;
> (B) 0.08%; *and*
> (C) 0.04%.

(Emphasis added).

"When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute." *State v. Moore, 303 S.W.3d 515, 520 (Mo. banc 2010).* "This Court's primary rule of statutory interpretation is to give effect to legislative intent in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of America, Inc., 278 S.W.3d 670, 672 (Mo. banc 2009)*; *Dep't. of Soc. Servs., Div. of Med. Servs., 224 S.W.3d at 9* ("Regulations are interpreted according to the same rules as statutes."). The regulation's use of the conjunction "and" on its face seems to require that three simulator solutions set at different concentration levels be used to calibrate each breath analyzer.

The Director argues, however, that considered in the context of other regulations, the *intent* of the regulations as a whole is to require only one solution be used during calibration. The Director concedes that the regulation just quoted uses the word "and" when listing the three types of solutions that "shall" be used. The Director specifically acknowledges that because 19 CSR 25-30.051.2 joins together the list of the three

6

solutions with the word "and," the regulation cannot itself be read to require use of only a single solution rather than three solutions. Indeed, in the context of interpreting contracts such as insurance policies, this Court has recognized that "… while 'and' *can* mean 'or', most commonly 'and' means simply 'and'." *Burns v. Smith, 303 S.W.3d 505, 511 (Mo. banc 2010).* "The first meaning of 'and' … is not 'or' but 'along with or together with' or words of comparable meaning." *Id.* As this Court noted in *Hawkins v. Hawkins, 511 S.W.2d 811 (Mo. 1974)*, in holding that the word "and" in an ordinance was used as a conjunctive and did not mean "or":

> The construction … is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion … as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake.

*Id. at 813; accord, Strayer v. State, 339 S.W.3d 621, 625-26 (Mo. App. 2011).* Similarly, here, nothing in the language itself requires that the word "and" be interpreted to be used any other way than its ordinary plain meaning as a conjunctive.

Instead, the Director argues that 19 CSR 25-30.051.2 does not actually address what solutions must be used in calibrating a breath analyzer. Rather, it is just a preliminary regulation that lists the kinds of solutions that are approved for use in testing of breath analyzers. Of course, if the Director were correct that the provision stating that testing is to be performed using solutions 1, 2 and 3 is not the provision governing what solutions must be used, it begs the question as to which regulation then sets out that information. The Director says the proper limitation to one test can be inferred from a reading of 19 CSR 25-30.051.2 *in pari materia* with related regulations. While none of

7

those other regulations actually say that only a single solution need be used, the Director and the dissent say this should be read into them because they discuss tests and solutions in the singular.

While this Court agrees that regulations dealing with the same subject should be read *in pari materia, see e.g. State ex rel. Evans v. Brown Builders Elec. Co., 254 S.W.3d 31, 35 (Mo. banc 2008),* this Court disagrees that consideration of these other regulations supports the Director's or dissent's argument. Neither of the regulations they point to – 19 CSR 25-30.031 and 19 CSR 25-30.060 – states that only one solution needs to be used in calibrating a breath analyzer. Rather, they set out the rules regarding such matters as who is permitted to perform calibration procedures, when they should be performed, and the use of a certain form contained in the regulations to record the maintenance test results. [3] That a regulation addresses use of each solution one at a time or references a duty to report each result separately cannot change the express requirement in 19 CSR 25-30.051.2 that all three solutions be used.

Similarly, the Director's and dissent's reliance on the language used in the form attached to one of the regulations does not aid their argument. They suggest that a heading in a line halfway down the Alco-Sensor IV reporting form appended to 19 CSR 25-30.031 provides the direction that only a single standard solution is to be used. A direction in the middle of a form used to record a test, however, is an odd place to set out

---

[3] The Director notes, for instance, that 19 CSR 25-30.031 refers to "report" in the singular in the course of describing the duties of Type II permittees. An intent to require a single solution be used rather than the three solutions expressly required by 19 CSR 25-30.051.2 cannot be inferred from such reference in the course of a regulation addressing permittees rather than the tests themselves.

8

the general rules for conducting the tests in the first instance. Normally, the governing law is set out in a regulation's text. Even then, the Director's argument is based on inference, for the line in question, under the heading "calibration check," states simply that "*only one standard is to be used per maintenance report.*"  *Alco-Sensor IV with Printer Maintenance Report, Report #7, 19 CSR 25-30.031.*  While this line clearly tells the tester how to fill out the form – only one standard solution's tests are to be included per each maintenance report – it says nothing about how many solutions in total must be used, nor does it state that only a single maintenance report is to be used per calibration, as one would expect if the form so intended. Indeed, had that line in the form been intended to direct the use of only one standard solution in calibrating a breath analyzer, it would have said "Only one standard is to be used per calibration" rather than "Only one standard to be used per maintenance report."  As written, this line simply means that each solution must be reported on its own form.

Indeed, the *only* regulation to address the number of solutions that must be used is 19 CSR 25-30.051.2. And, that regulation does not merely "list" the solutions that may be used as the Director suggests. Rather, it *requires* use of more than a single solution, stating "[t]he standard simulator solutions used *shall* have a vapor concentration within … the following values: …" and then listed three values connected by the word "and." *Id*. (emphasis added).

In this context, the word "shall" "unambiguously indicates a command or mandate." *Frye v. Levy, 440 S.W.3d 405, 408 (Mo. banc 2014)*. "To suggest any other meaning is to ignore the plain language of the statute." *Id*. Regulation 19 CSR 25-

9

30.051.2 directs or requires that the solutions listed shall be used. In conjunction with the word "and," the plain language of the regulation requires that three solutions be used to calibrate breath analyzers. A line taken out of context from a form cannot change the meaning of this clear language requiring use of three solutions. DHSS indirectly so recognized when it decided in 2014 to no longer require the use of three solutions. How did it accomplish this change? By amending 19 CSR 25-30.051.2 to replace the word "and" with "or." That is all that was necessary to reduce the number of required solutions from three to one. But if the Director were correct that this subsection merely lists available solutions, then this is not the subsection DHSS would have changed.

Finally, this Court rejects the Director's argument that it would not be good policy to require three standards when one would do, so the 2014 amendment should be read simply to "clarify" that one standard was always intended. It is up to the state legislature to determine policy, not this Court. But the Court notes that Ms. Stiers has identified at least five other states that require more than one solution to be used in the testing of breath analyzers.[4] While DHSS later may have determined that the requirement of a three solution calibration standard was too onerous, that does not negate the fact that until the regulation was amended in 2014, three solutions were required. "A change in a statute is intended to have some effect, and the legislature will not be charged with having done

---

[4] The five states are: New Jersey, *See State v. Chun, 943 A.2d 114, 135 (N.J. 2008);* Washington, Washington State Patrol, Breath Test Program, Chapter 3, pg. 16 (November 20, 2014); 67, Pa. Code § 77.26(b)(1) (1989); Virginia, Virginia Department of Forensic Science, Breath Alcohol Procedures Manual, 21-22 (Jan. 7, 2014); Texas, Texas Breath Alcohol Testing Program, Standard Operating Guidelines, pg. 7, 13 (Aug. 24, 2015).

a meaningless act. [W]hat the legislature intended is to be concluded from the language which it used." *State v. Swoboda, 658 S.W.2d 24, 26 (Mo. banc 1983)* (internal citation and quotation marks omitted). The trial court did not err in holding that the calibration failed to comply with the requirements of the 2012 version of 19 CSR 25-30.051.2 in place at the time of Ms. Stiers' breath test. [5]

## IV.     THE TRIAL COURT CORRECTLY APPLIED THE REGULATION IN PLACE AT THE TIME OF THE BREATH TEST

Recognizing that the Court might find that the regulation in effect at the time of arrest required use of three solutions, the Director alternatively argues that the propriety of the breath test should be governed by the version of 19 CSR 25-30.051 in effect at the time of Ms. Stiers' trial. The revised version of this regulation was adopted by DHSS on an emergency basis effective February 28, 2014, long after the calibration of the breath analyzer in June 2013, Ms. Stiers' breath test and arrest on July 12, 2013, and her administrative hearing in November 2013, but prior to her April 10, 2014, trial. The Director says 19 CSR 25-30.051 is a procedural regulation governing the admission of breath test results at trial, so this Court should apply the regulation in effect at the time of the trial to retrospectively validate the breath analyzer calibration even if that calibration

---

[5] The dissent also notes that in publishing the regulation at issue in 2012, the Director said in the state register that its purpose was to add a concentration level available to be used. This statement does not purport to address whether all three concentrations must be used; that is left to the regulation itself, of course. The language quoted is not part of the regulation itself, however. It is at best legislative (or, more accurately, regulatory) history and cannot contradict the language of the regulation itself. Similarly, the fact that the Director in publishing the 2014 amendment to the regulation said that it was intended to "clarify" prior law cannot retroactively change prior law simply because that is what the Director now has decided would be a better regulation.

11

was not conducted in accordance with the regulation in effect at the time of the calibration, breath test and arrest, license suspension or administrative review. This Court rejects the Director's argument.

In arguing which version of 19 CSR 25-30.051.2 governs admission of the breath test results, the Director cites various court of appeals cases addressing when rules are procedural and substantive and when they apply retrospectively and prospectively. The Director and the court of appeals cases on which the Director relies, however, misunderstand the nature of the regulation at issue.

There is no question that the rules of evidence in effect at the time of trial govern. There is also no question that the rules of civil procedure in effect at the time of trial govern the procedural aspects of the trial. This is true even though, necessarily, the trial itself concerns the effect of certain antecedent facts – here, the validity of a breath test conducted some nine months previously. The legislature has provided the rules governing admission of breath test results in section 577.037. Section 577.037.1 states that a breath test showing a BAC above .08 percent is prima facie evidence that a person was intoxicated at the time the test was taken. Section 577.037.4 states that, for section 577.037.1 to apply, the breath test "shall have been performed as provided in sections 577.020 to 577.041 and in accordance with methods and standards approved by the state department of health and senior services." *§ 577.037.4*. Section 577.020.3 states: "Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid pursuant to the provisions of sections 577.019 to 577.041 shall be performed according to methods approved by the state department of health and senior services by licensed

12

medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose."

In other words, section 577.037 sets out the rules governing admission of breath test results and one of the requirements for admission is that the breath test be validly performed in accordance with DHSS regulations. While the rules of evidence govern the procedure for admission of evidence and so the rules in effect at trial are followed, that is an entirely different issue from whether the regulations governing how to determine whether a breath analyzer was validly calibrated at the time it was used to test a driver's blood alcohol were followed.[6]

The validity of a breath test necessarily must be determined and fixed at the time the test is conducted. To argue otherwise ignores the fact that the calibration is not simply used as a factor when considering the admissibility of a breath test result in court. To the contrary, it is used as the basis for suspending or revoking an individual's license. This suspension or revocation occurs regardless of whether the person later files an administrative appeal or whether the person files suit in court if the suspension or revocation is affirmed on administrative review. A test result over the legal limit has a

_____

[6] The underlying regulation setting out procedures governing calibration is not a rule of evidence; it is a rule governing the technical requirements for calibration. The rules governing admissibility, as noted, are set out in the statutes. To the extent that the court of appeals cases on which the Director relies, including but not limited to *State v. Kummer, 741 S.W.2d 285, 289 (Mo. App. 1987); Eckhoff v. Dir. of Revenue, 745 S.W.2d 815, 817 (Mo. App. 1988); DeClue v. Dir. of Revenue, State of Mo., 945 S.W.2d 684, 686 (Mo. App. 1997); Trumble v. Dir. of Revenue, 985 S.W.2d 815, 817 (Mo. App. 1998); Tate v. Dir. of Revenue, 982 S.W.2d 724, 726 (Mo. App. 1998); Hunt v. Dir. of Revenue, 10 S.W.3d 144, 149 (Mo. App. 1999); Roberson v. Vincent, 290 S.W.3d 110, 114-15 (Mo. App. 2009),* incorrectly state or imply otherwise, they are in error.

substantive effect on the person's license to drive, and it is because of that effect that the calibration of the machine used to test that person's breath must be validly performed. That is why section 577.020.6 provides, "Upon the request of the person who is tested, full information concerning the test shall be made available to such person," including "If the test was administered by means of a breath-testing instrument, the date of performance of the most recent required maintenance of such instrument." It would be pointless to provide the person with information about how the test was conducted and about the maintenance procedures followed if those procedures could be changed by DHSS after the fact. In fact, changing the rules after the fact is what the Director admits DHSS attempted here when it realized that its regulation might be held to require three solution calibrations when its officers often were using only one solution. While such an opportunity might be convenient, neither the statutes nor regulations issued under it purport to give DHSS such unique retroactive authority to negate any prior mistakes made in maintenance of its machines used for breath tests.

Indeed, such a procedure would lead to absurd results. This case provides a good example. At the time of Ms. Stiers' breath test, the 2012 version of 19 CSR 25-30.051.2 was in effect, requiring calibration with three solutions. The officer tested Ms. Stiers' breath and issued Ms. Stiers a suspension of her license because the test showed that she had a BAC over the legal limit. Ms. Stiers appealed that suspension to the administrative agency. That agency held a hearing. At the time of the hearing, the 2012 regulation was still in effect. The department necessarily determined the propriety of the calibration of the breath analyzer under that regulation, and (incorrectly, as discussed above) found the

14

test valid even though the calibration did not comply with the 2012 regulation's requirements.

Ms. Stiers petitioned for *de novo* review in circuit court, as allowed by section 302.535.1, in November 2013. The State requested a number of extensions, which delayed the trial date until April 2014. In the interim, DHSS adopted an emergency revision to 19 CSR 25-30.051.2 changing the word "and" to "or" in that subsection so that thereafter the regulation would require testing with only one solution.

The Director then argued at Ms. Stiers' trial that the just-revised regulation should be applied. In other words, the Director argued that a different standard of validity should be utilized at trial than the standard utilized when the calibration, the breath test, the arrest and the administrative appeal occurred – in fact, in this case, it would be a different standard than was in effect when Ms. Stiers filed her petition for a trial in circuit court. Indeed, in the absence of her agreement to the extensions granted the Director, it is a different standard than would have applied had the trial been properly held.

Even more importantly, it is a different standard than would have been applied to any other person stopped on the same date as Ms. Stiers and tested using the same machine by the same officer but whose trial occurred prior to February 28, 2014. One would lose their right to drive; the other would not.

An invalid test cannot be made valid after the fact by changing the rules governing validity. The trial court properly applied the version of 19 CSR 25-30.051 in place at the

15

time of Ms. Stiers' breath test. [7]

## V.  CONCLUSION

The plain language of the 2012 regulation requires that to comply with section 577.037, a breath analyzer must have been tested using three testing solutions. The Director failed to lay a proper foundation for the admission of the results of Ms. Stiers' breath test by showing that the calibration of the breath analyzer complied with 19 CSR 25-30.051 as required by section 577.037.  The judgment of the trial court is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Fischer, Draper and Teitelman, JJ., concur;
Wilson, J., dissents in separate opinion filed;
Breckenridge, C.J., and Russell, J., concur in
opinion of Wilson, J.

_____

[7] Ms. Stiers also argues that as amended in 2014, 19 CSR 25-30.051.8 expressly requires that the validity of the test be determined under the regulation in effect at the time of the arrest. That subsection states, "Maintenance reports completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted." By its terms, this section addresses only tests that were valid when performed.  Here, this Court has found that the test was not valid when performed. Subsection 8 therefore, does not apply.

16



# SUPREME COURT OF MISSOURI
## en banc

KRISTIN NICOLE STIERS,     )
             )
  Respondent,      )
             )
vs.           )   No. SC94840
             )
DIRECTOR OF REVENUE,    )
             )
  Appellant.       )

### Dissenting Opinion

I agree that the trial court applied the correct version of 19 CSR 25-30.051(2) in this case, but I write separately because nothing in this regulation requires that breath analyzers be calibrated with three different solutions. Instead, the Department of Health and Senior Services regulations require only that the three solutions approved for use in calibrating breath analyzers be obtained from approved suppliers and that they conform to stated standards (i.e., that they not vary more than five percent from the intended strength). The Director laid a proper foundation for admission of the breath test results, and the trial court should not have excluded those results from evidence. Accordingly, I would vacate the judgment of the trial court and remand.

The fundamental flaw in Ms. Stiers' argument is that 19 CSR 25-30.051(2) does not address how many different solutions must be used in testing a breath analyzer. Instead, this regulation merely identifies which solutions may be used. As discussed

below, 19 CSR 25-30.060(3) is the only regulation that expressly addresses how the particular breath analyzer at issue in this case (i.e., the Alco-Sensor IV) is to be tested, and nothing in this regulation (or the form promulgated with it) can fairly be read to require the use of all three different strength solutions.

Even though 19 CSR 25-30.051 does not address how many solutions must be used to test a breath analyzer and 19 CSR 25-30.060 does, Ms. Stiers' argument rests solely on the fact that the three strength solutions approved for use under 19 CSR 25-30.051(2) are separated by the word "and," which Ms. Stiers insists must be read to mean that all three approved solution strengths must be used every time any breath analyzer is tested. This argument ignores the language of the rest of 19 CSR 25-30.051, the language of other relevant regulations, and the obvious intent of these regulations as demonstrated by both the prior and subsequent versions of 19 CSR 25-30.051.

The regulation on which Ms. Stiers builds her argument, 19 CSR 25-30.051, states in pertinent part:

(1) Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures.

(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used ***shall have a vapor concentration*** within five percent (5%) of the following values:
   (A) 0.10%;
   (B) 0.08%; and
   (C) 0.04%

\*\*\*

(5) Compressed ethanol-gas standard mixtures used to verify and calibrate evidential breath analyzers, shall be mixtures provided from approved

2

suppliers.   The compressed ethanol-gas mixtures used ***shall have a concentration*** within five percent (5%) of the following values:
(A) 0.10%;
(B) 0.08%; and
(C) 0.04%

\*\*\*

19 CSR 25-30.051 (effective Dec. 30, 2012) (emphasis added).

The first subsection refers to standard "solutions" and ethanol-gas "mixtures" because it is addressing the "[s]tandards used for the purpose of verifying and calibrating breath analyzers," plural.   The first sentences of the second subsection then require that "[s]tandard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers."  Again, the plural "solutions" matches the use of the plural "breath analyzers."

The second sentence of subsection (2) is where Ms. Stiers myopically focuses her argument.  She contends this sentence means: "The standard simulator solutions used shall have vapor ***concentrations*** within five percent (5%) of … 0.10%;  … 0.08%; and … 0.04%."  [Emphasis added.]  But that is not what the regulation says.  Instead, it reads: "The standard simulator solutions used shall have ***a vapor concentration*** within five percent (5%) of … 0.10%;  … 0.08%; and … 0.04%."  19 CSR 25-30.051(2) (emphasis added).  Grammatically, requiring the plural "solutions" to have "a [singular] vapor concentration" is ambiguous.  Requiring "a [singular] vapor concentration" to be within five percent of the three listed values is not only grammatically ambiguous, it is mathematically impossible.

3

The regulation may be ambiguous, but it is admirably consistent. While some breath analyzers are tested using standard simulator solutions, others are tested using standard compressed ethanol-gas mixtures. Like subsection (2), subsection (5) requires these mixtures to be obtained from approved suppliers. Subsection (5) then goes on to state: "The compressed ethanol-gas mixtures used shall have *a concentration* within five percent (5%) of … 0.10%; … 0.08%; and … 0.04%." 19 CSR 25-30.051(5) (emphasis added). Again, as in subsection (2), the plural "mixtures" are required to have "a [singular] concentration" and that concentration must be within five percent of three different values. This, too, is grammatically ambiguous and mathematically impossible.

Ms. Stiers asks this Court to adopt the only construction of this regulation that is patently absurd and with which it will be practically impossible to comply. She ignores the plural "standard simulator solutions" in subsection (2) and "compressed ethanol-gas mixtures" in subsection (5), which are used throughout the regulation and which refer to all solutions (or mixtures) from all approved providers that may be used to test any of the multitude of the approved breath analyzers in use around the state because they are inconsistent with her proposed construction. By the same token, Ms. Stiers ignores the plain statement in subsection (2) that all solutions "shall have a [singular] vapor concentration" and the equally plain statement in subsection (5) that all mixtures "shall have a [singular] concentration" because these phrases cannot be reconciled with her construction either.

Instead, Ms. Stiers' argument focuses solely on the word "and" separating the three approved values in subsections (5) and (7), and she insists that this Court give this

4

word a conjunctive meaning such that all breath analyzers must be tested at all three different values.  If 19 CSR 25-30.051(2) and (5) addressed how many tests each breath analyzer must pass, this argument may be worthy of further attention.  But they do not.  19 CSR 25-30.051(2) and (5) address what solutions or mixtures may be used and which providers may supply them.  Nothing more.  And, even if these subsections did address the number of solutions or mixtures that must be used in testing each breath analyzer (which they do not), the regulation would be an exercise in futility because no solutions can have "*a* [singular] *vapor concentration*" – and no ethanol-gas mixtures can have "*a* [singular] concentration" – that is within 5 percent of the three stated values.  Ms. Stiers fails to explain why the DHSS would adopt a regulation with which no operator and no test solution could comply, and this Court should not adopt any construction that leads to such an absurd result.

To the contrary, this Court should adopt a construction that gives effect to all of the language of the regulation, to the regulation as a whole, and to the surrounding regulations.  Giving the word "and" its disjunctive meaning accomplishes this.[1]  Read this way, subsections (2) and (5) state that standard solutions or mixtures must be used, they must be obtained from approved suppliers, and they must be one of the three listed strengths.  Nothing is added to the regulation, and nothing is taken away.

---

[1]  This Court has long noted that "the word 'and' is sometimes construed to mean 'or' … where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantmount to a refusal to correct a mistake." *Hawkins v. Hawkins*, 511 S.W.2d 811, 813 (Mo. 1974).

This construction also is consistent with the language of 19 CSR 25-30.060(3) which, unlike 19 CSR 25-30.051, expressly addresses the question of how the standard solutions are to be used in testing the Alco-Sensor IV breath analyzer at issue in this case. It provides: "When using the Alco-Sensor IV with printer, the procedures on the form included herein shall be performed and the form shall be completed." 19 CSR 25-30.060(3) (emphasis added). The form promulgated with the regulation addresses several tests that must be conducted regularly by the operator and states in pertinent part:

CALIBRATION CHECK – (**ONLY ONE STANDARD IS TO BE USED PER MAINTENANCE REPORT**)

Run three tests using a standard solution. All three tests must be within +/- 5% of the standard value and must have a spread of .005 or less. Check the box corresponding to the standard solution being used. (PRINTOUT ATTACHED).

☐ 0.100% STANDARD – MUST READ BETWEEN 0.096 AND 0.105% INCLUSIVE

☐ 0.080% STANDARD – MUST READ BETWEEN 0.076% AND 0.084% INCLUSIVE

☐ 0.040% STANDARD – MUST READ BETWEEN 0.038% AND 0.042% INCLUSIVE

TEST 1 ☞ _____    TEST 2 ☞ _____    TEST 3 ☞ _____

The requirements of this section of the required form are inconsistent with Ms. Stiers' "three tests using three different strength solutions" construction in many ways.[2] First, and in the only language in this part of the form that DHSS saw fit

_____

[2] Ms. Stiers is not entitled to disregard the language of this form any more than she may disregard the language of any other part of the rule. Forms promulgated with a regulation are no less a part of that regulation than the text of the rule, and any valid construction of one must account for the other. *Cf. Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997) ("the trial court is required to determine and find for the record the presumed correct child support pursuant to Rule 88.01, utilizing Civil Procedure Form No. 14").

to emphasize with bold letters, the top line of this section of the form states that only *one*

*standard* is to be used per maintenance report.  As if that were not clear enough, the next

sentence instructs the operator to run "three tests using *a* [singular] *standard solution*,"

not three different solutions of different strengths.  Finally, to avoid any confusion, the

form requires the operator to identify which strength solution was used and to report all

three test scores to ensure that each result was within .005 of that single strength (a feat

that would be impossible if three tests were conducted using three different strengths).

In an effort to avoid the plain meaning of the required DHSS form, Ms. Stiers

argues that operators must be required to file three copies of the form, one for each of the

three strength solutions she contends must be used to test to each Alco-Sensor IV breath

analyzer.[3]  But this argument ignores the language of 19 CSR 25-30.060, which is the

only regulation in which the testing requirements are addressed expressly.  When using

the Alco-Sensor IV, this regulation requires that "the procedures on *the form* [singular]

_____

[3]  Ms. Stiers attempts to bolster her "three form" argument by claiming that six other states
require multiple tests with different solution or vapor concentrations.  Other states' procedures
have no relevance to the proper construction of the DHSS regulations at issue here, particularly
when the other state's regulation unambiguously states – as the DHSS regulations do not – that
three tests be done with three separate strength solutions.  *See* 67 Pa. Code § 77.26 ("Calibration
testing a breath test device *shall consist of conducting three separate series of five simulator
tests*.  One of the series of tests shall use simulator solution designed to give a reading of .10%.
One of the series of tests shall use simulator solution designed to give a reading of .05%.  The
last series of tests shall use simulator solution designed to give a reading above .10% which is a
multiple of .05%.") (emphasis added).  Ms. Stiers' argument is further weakened by reliance on
other states' maintenance or operations manuals, which were not part of the record below nor
provided to this Court by citation or otherwise.  To the extent these materials could be located, it
appears that some of them actually undercut Ms. Stiers' "three tests on three forms" construction
because they expressly require "only one test" when testing breath analyzers from this
manufacturer.  *See* Washington BTP Technical Manual, pp. 35, 37 (BTPTechM rev. 003) ("If the
[results are within stated limits] … only one test is necessary").

included herein shall be performed and ***the form*** [singular] shall be completed." 19 CSR 25-30.060(3) (emphasis added). No fair reading of this requirement supports Ms. Stiers' argument that multiple forms need be filed.[4] To indulge such an argument, the Court must add words that are not there in order to find a three-form reporting requirement that does not exist.

Ms. Stiers' construction of 19 CSR 25-30.051(2), which is based solely on inferences she draws from the conjunctive use of the word "and," not only is inconsistent with the express testing requirements in 19 CSR 25-30.060, but it also is inconsistent with the way in which "and" is used in 19 CSR 25-30.050. This rule identifies the "approved breath analyzers" that may be used under the DHSS regulations. Among the list of approved machines are "Alco-Sensor IV with printer ***and*** Intox EC/IR II," both of which are manufactured by "Intoximeters, Inc." 19 CSR 25-30.050(1) (emphasis added).[5] As with 19 CSR 25-30.051(2), the use of the word "and" in 19 CSR 25-30.050(1) means that both machines are approved for use, but it does not mean that both machines must be used in each test. Instead, the operator is free to select any one of the

---

[4] In addition, Ms. Stiers' "three form" approach is contradictory to all of the other tests required on the form in the DHSS regulation, only a portion of which is quoted above. These steps include checking the digital readouts, the printer, the time and date display, and ensuring that the Alco-Sensor is at the proper temperature. No conceivable purpose would be served by making the operator repeat these tests (and others) three times in the process of completing the three forms that Ms. Stiers' construction would require.

[5] This regulation goes on to list other approved breath analyzers, i.e, the "BAC DataMaster and DataMaster DMT" by a second manufacturer and the "Intoxilyzer, Model 5000 and Intoxilyzer, Model 8000" by a third. 19 CSR 25-30.050(1) (emphasis added). It would be absurd to suggest that operators must buy both of a manufacturer's breath analyzers merely because they are connected by the word "and." Instead, the obvious intent of the regulation is to note that each manufacturer has two approved machines, but the operator is free to choose between them.

approved machines, just as 19 CSR 25-30.051(2) permits the operator to select any one of the approved standard simulator solution strengths.

Finally, even though the intent of 19 CSR 25-30.051 is plain when read in light of its purpose and in harmony with the surrounding regulations, confirmation that Ms. Stiers' construction is incorrect is readily available when prior and subsequent versions of 19 CSR 25-30.051 are consulted. From July 30, 2004, until December 30, 2012, 19 CSR 25-30.051(2) provided:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.

(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.04% or 0.040% level, shall be solutions from approved suppliers.

This regulation is simple and unambiguous. Two solution strengths are approved, and each must be obtained from the list of approved suppliers. There is no suggestion that both strengths must be used and no evidence that anyone ever construed the regulation to impose such a requirement.

On July 2, 2012, the DHSS published a proposed amendment to 19 CSR 25-30.051(2) to promulgate the language of the regulation at issue in this case. Ms. Stiers insists that the purpose of this amendment was to do away with the prior scheme in which operators could test breath analyzers with either of two approved solution strengths and replace it with a scheme in which operators must use all three approved solution strengths each time they test a machine. The stated purpose of the 2012 amendment, however, does not support her argument. Instead, it states:

9

> *PURPOSE*: This amendment changes the name of the division, chapter, title and purpose of the rule and adds compressed ethanol-gas mixtures as an option for accuracy checks and instrument calibrations in addition to standard simulator solutions. It also makes it necessary for simulators to be recalibrated annually ***and adds 0.08% as another concentration level available for performing accuracy checks and instrument recalibrations***.

Missouri Register, Vol. 37, No. 13, at pp. 1027-28 (July 2, 2012) (emphasis added).

When trial courts began to throw out breath analyzer reports based on the "three tests using three different solution strengths" construction that Ms. Stiers now urges this Court to adopt, the DHSS again amended 19 CSR 25-30.051(2) and (5) to prevent such absurd results. This amendment replaced the unduly scrutinized and unfairly emphasized word "and" in both subsections with the word "or." The purpose of this change was clearly stated:

> *PURPOSE*: This amendment ***clarifies which standard simulator solutions of the listed concentrations may be used*** in verifying and calibrating breath analyzers, as well as the annual checks required on simulators used in conjunction with the standard stimulator solution.

Missouri Register, Vol. 38, No. 20, at pp. 1625-26 (October 15, 2012) (emphasis added).

In the face of an unambiguous intent to allow operators to test breath analyzers with either (but not both) of the approved solution strengths before December 2012 and the unambiguous intent to "clarify" that operators may test breath analyzers with any (but not all three) of the approved solution strengths again in February 2014, there simply is no room to argue that the DHSS actually intended to require operators to test breath analyzers with all three of the approved solution strengths during the intervening 14 months.

If, during this interim period, the plain language of 19 CSR 25-30.051(2) required three separate tests using three separate solution strengths, I would enforce the regulation regardless of what I might think the DHSS may have meant but mistakenly failed to say. But that is not this case. 19 CSR 25-30.051(2) does not address what tests must be done; it addresses what solution strengths are approved and where those solutions must be obtained. At worst, 19 CSR 25-30.051(2) was ambiguous during the 14 months between the unambiguous prior version and the equally unambiguous current version. No fair effort to divine the actual intent of 19 CSR 25-30.051(2) during this interval could ever reach the conclusion Ms. Stiers asks this Court to reach.

Accordingly, this Court should not interpret 19 CSR 25-30.051(2) to impose additional testing requirements that are not to be found in prior or subsequent versions of this regulation, are not germane to the express purpose of 19 CSR 25-30.051(2) itself, and are inconsistent with the plain language and obvious intent of surrounding regulations. Instead, the only reasonable reading of 19 CSR 25-30.051 is that it approves the use of any one of the three solution strengths but does not require operators to use them all in conducting any particular test. Consistent with this construction, the trial court erred in refusing to admit the breath analyzer results, and the case should be remanded.

_____
Paul C. Wilson, Judge

11