

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102236 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Clark County |
| vs. | ) | 13 CK-CR00625-01 |
| | ) | |
| RICHARD W. MATTIX, | ) | Honorable Gary L. Dial |
| | ) | |
| Appellant. | ) | Filed: March 8, 2016 |

Richard W. Mattix ("Appellant") appeals the judgment entered by a jury convicting him of driving while intoxicated. We reverse and remand for a new trial.

## I.     BACKGROUND

Appellant was charged with one count of driving while intoxicated and was tried by a jury on August 20, 2014, which produced the following facts, viewed in the light most favorable to the verdict.

On the evening of June 2, 2013, Trooper Brian Hillyer of the Missouri Highway Patrol initiated a traffic stop after he observed Appellant driving a truck, weaving in its lane, and crossing the center line. Trooper Hillyer noticed the smell of alcohol on Appellant's breath, Appellant's eyes were bloodshot and watery, and Appellant's walking was "swaying and uncertain."

Because Trooper Hillyer suspected that Appellant was intoxicated, he administered field sobriety tests: the gaze nystagmus test, the walk-and-turn test, the one-legged-stand test, and asking Appellant to recite the alphabet.[1] During the gaze nystagmus test, Appellant exhibited six out of six clues showing intoxication. Appellant could not perform the walk-and-turn test, and Trooper Hillyer asked him to stop the test. During the one-leg-stand test, Appellant used his arms for balance and could not pick up his foot off the ground.

During Trooper Hillyer's investigation following the traffic stop, Appellant made numerous admissions regarding his drinking, including that he had consumed a "fifth" of peppermint schnapps, that "alcohol can hook you," that "drinking and driving is going to get you," and he lamented that he "did not want [his] lawyer to know about [the incident] . . .." Appellant's performance on the field sobriety tests and his statements further convinced Trooper Hillyer that Appellant was intoxicated, and he placed him under arrest.

Once at the police station, Appellant was informed of the Missouri implied consent law, section 577.020 RSMo 2007,[2] and provided a sample of his breath. The test was performed using a "Datamaster" breath analysis machine. Trooper Hillyer testified he knew nothing about the maintenance of the machine and stated the maintenance was performed by Trooper Joseph Davidson. The result of the test showed that Appellant had a blood alcohol level of 0.206 percent.

Prior to trial, Appellant filed a motion to suppress the results of the Datamaster, alleging the results were inadmissible because the maintenance of the Datamaster did not comply with the

---

[1] The gaze nystagmus test, walk-and-turn test, and one-legged-stand test "are the only scientifically validated and reliable field sobriety tests recognized by the National Highway and Traffic Safety Administration." *State v. Pickering*, 473 S.W.3d 698, 701 n.2 (Mo. App. W.D. 2015) (emphasis and quotations omitted).

[2] Section 577.020 has been subsequently amended, effective January 1, 2017, but those amendments are not relevant to the dates at issue here. All further references to section 577.020 are to RSMo Supp. 2007.

version of state regulation 19 CSR 25-30.051(2) (effective December 30, 2012)[3] effective at the time of Appellant's arrest. That regulation provided:

> Standard simulator solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
>
> (A) 0.10%;
>
> (B) 0.08%; and
>
> (C) 0.04%.

*Id.* At a hearing on the motion to suppress, Trooper Davidson testified he was the person responsible for the maintenance of the Datamaster. He further testified that prior to Appellant's arrest, the last time he had checked the calibration of the Datamaster he used only a 0.10 percent solution and that he had never performed a calibration check using the 0.08 percent or 0.04 percent solutions. The trial court denied Appellant's motion to suppress.[4]

Prior to trial, Appellant also filed a motion in limine seeking to prevent the State from introducing evidence Appellant could not provide a valid driver's license at the time of the traffic stop, which the trial court granted. However, at several points during Trooper Hillyer's testimony, counsel for the State asked questions regarding Appellant's driver's license and Trooper Hillyer testified that Appellant could not produce one. Appellant objected to the questions and requested a mistrial. The trial court sustained the objections and instructed the jury to disregard Trooper Hillyer's statements, but denied Appellant's request for a mistrial.

---

[3] Unless otherwise indicated, all further references to 19 CSR 25-30.051(2) are to the version effective December 30, 2012.

[4] The trial record shows that no docket entry was ever made noting that the motion had been denied and there was no pronouncement of the denial during any hearing that was recorded. However, it is clear that the motion was denied given that the results of the Datamaster were introduced into evidence at trial.

Ultimately, the jury found Appellant guilty of driving while intoxicated. The trial court found Appellant was a prior and persistent offender due to prior felony convictions, including two prior driving while intoxicated convictions. The trial court entered a judgment in accordance with the jury's verdict and sentenced Appellant to four years' imprisonment. This appeal followed.

## II.    DISCUSSION

Appellant brings two points on appeal. In his first point, Appellant claims the trial court abused its discretion in admitting the breath alcohol test results into evidence. In his second point, Appellant asserts the trial court erred in not granting him a mistrial following Trooper Hillyer's testimony at trial regarding his driver's license.

### A.    Breath alcohol test results

In his first point on appeal, Appellant argues the trial court abused its discretion in admitting the results of the breath alcohol test from the Datamaster into evidence, because they violated his due process rights. Specifically, Appellant contends the test was improper, as Trooper Davidson only calibrated the Datamaster with a vapor concentration on 0.10 percent without using the addition calibrations at 0.08 percent and 0.04 percent as required by the version of 19 CSR 25-30.051(2) effective at the time of Appellant's arrest. We agree.

#### 1.    Standard of review

The decision to admit or exclude evidence at trial lies within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Murrell v. State*, 215 S.W.3d 96, 109 (Mo. banc 2007). An abuse of discretion occurs when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Id*. Even if an abuse of

4

discretion occurs, we will not reverse the trial court's decision unless the abuse had a material effect on the trial. *Id*. at 109-10.

> ### 2. Breath analyzer calibration

In order for the results of a blood-alcohol analysis to be admissible into evidence, the analysis must have been performed in accordance with the applicable statutes in sections 577.020 to 577.041 RSMo Supp. 2011[5] and methods and standards approved by the state department of health and senior services. Section 577.037.1 and .4 RSMo Supp. 2002;[6] *Woodall v. Director of Revenue*, 795 S.W.2d 419, 419 (Mo. App. E.D. 1990). Further, "where the Department of Health has enacted regulations concerning the proper methods of conducting blood alcohol tests . . . the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence." *State v. Regalado*, 806 S.W.2d 86, 88 (Mo. App. W.D. 1991).

As stated above, at the time of Appellant's arrest, 19 CSR 25-30.051(2) provided:

> Standard simulator solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used *shall* have a vapor concentration within five percent (5%) of the following values:
>
> > (A) 0.10%;
> >
> > (B) 0.08%; *and*
> >
> > (C) 0.04%.

(emphasis added). Appellant contends on appeal that the use of the word "and" in the regulation required the Datamaster to be calibrated using all three solutions listed, which was not done in this case. For the reasons discussed below, we agree.

---

[5] Section 577.041 has been subsequently amended, effective March 3, 2014, but those amendments are not relevant to the dates at issue in this case.

[6] Section 577.037 has been subsequently amended, effective January 1, 2017, but those amendments are not relevant to the dates at issue in this case. All further references to section 577.037 are to RSMo Supp. 2002.

5

The Missouri Supreme Court recently interpreted the above-referenced regulation in *Stiers v. Director of Revenue*, 2016 WL 143230 (Mo. banc). The Court noted that regulations are interpreted using the same rules as statutes and the primary rule of statutory interpretation is to give effect to the legislative intent of the plain meaning of the text. *Id.* at *3. Further, the ordinary meaning of "and" is "along with or together with," and it can only be used to mean "or" and provide alternatives where "it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake." *Id.* (quotations omitted). Because nothing in the regulation required "and" to be given anything but its ordinary, conjunctive meaning, the regulation required breath analyzers to be calibrated using all three solutions. *Id.* at *4-5.

We hold that *Stiers* controls the outcome here.[7] As in that case, the Datamaster used to analyze Appellant's blood alcohol level was not calibrated with all three solutions listed in 19 CSR 25-30.051(2), which the regulation required at the time of the breath alcohol test performed in this case. Nevertheless, Respondent presents alternative arguments as to why the trial court did not err. Namely, Respondent asserts, (1) the current version of the regulation no longer requires the use of all three solutions, and it should apply retroactively to the breath alcohol test here; and (2) even if the Datamaster results were erroneously admitted, Appellant was not prejudiced due to other evidence of his intoxication.

---

[7] *Stiers* was a civil action involving the suspension of the driver's license, 2016 WL 143230 at *1, while the case at bar is a criminal matter involving charges for driving while intoxicated. However, both cases hinge on the correct interpretation of the same regulation, 19 CSR 25-30.051(2), which is applicable to both civil and criminal cases. *See, e.g., State v. Pickering*, 473 S.W.3d 698, 700, 703 (Mo. App. W.D. 2015); *McGough v. Director of Revenue*, 462 S.W.3d 459, 460, 463 (Mo. App. E.D. 2015).

6

### 3.     Retroactivity

First, the version of 19 CSR 25-30.051(2) (effective February 28, 2014) in effect now and at the time of trial provides a breath analyzer shall be calibrated using a "(A) 0.10%; (B) 0.08%; *or* 0.04%" solution (emphasis added).  Respondent claims this change should apply retroactively to Appellant's breath alcohol test because the regulation is a procedural rule, which generally operates retroactively.  *DeClue v. Director of Revenue, State of Mo.*, 945 S.W.2d 684, 686 (Mo. App. E.D. 1997), *abrogated by Stiers*, 2016 WL 143230 at *6 n.2; *Eckhoff v. Director of Revenue, State of Mo.*,745 S.W.2d 815, 817 (Mo. App. W.D. 1988), *abrogated by Stiers*, 2016 WL 143230 at *6 n.2.  As the Missouri Supreme Court held in *Stiers*, this argument misunderstands the nature of the regulation at issue.  2016 WL 143230 at *6.  Per section 577.037, breath alcohol test results are only admissible if the test was validly performed, and "[t]he validity of a breath test necessarily must be determined and fixed at the time the test is conducted."  2016 WL 143230 at *6-7.[8]  Further, "[a]n invalid test cannot be made valid after the fact by changing the rules governing validity."  *Id*. at *7.  The change in the language of the rule therefore does not apply retroactively.  *Id*. at *5-7.

### 4.     Prejudice and conclusion as to point one

Finally, Respondent contends that even if the Datamaster results were erroneously admitted, they did not prejudice Appellant, given the other evidence of his intoxication in the record.  As stated above, a trial court's abuse of discretion on an evidentiary issue is not reversible error unless the abuse had a material effect on the trial.  *Murrell*, 215 S.W.3d at 109-10.

---

[8] The *Stiers* Court also reasoned the regulation change was not retroactive because the calibration requirement is not simply used as a factor in determining the breath alcohol test's admissibility at court, but the blood alcohol level test independent legal significance in that it serves as grounds to suspend a driver's license in the civil context.  2016 WL 143230 at *7.  However, the Court did not limit the holding to civil cases only, and to have a regulation function retroactively only in certain types cases would create an absurd result.

7

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1 RSMo Supp. 2011. Per section 577.037.1, the legal limit for blood alcohol level is 0.08 percent, but "[a]ny intoxication that in any manner impairs the ability of a person to operate an automobile is sufficient to sustain a conviction of driving while intoxicated." *State v. Pickering*, 473 S.W.3d 698, 704 (Mo. App. W.D. 2015). To prove a defendant was driving while intoxicated, the State is not required to present an actual measure of a driver's blood alcohol content. *Id.*

Appellant asserts the admission of the Datamaster results sufficiently prejudiced him in the eyes of the jury. Section 577.037.1 and .4 provide that a blood alcohol level of greater than 0.08 "shall be prima facie evidence that the person was intoxicated at the time the specimen was taken," and "will give rise to [a] presumption" the driver was intoxicated, rendering the evidence highly significant.

In response, the State argues Appellant was not prejudiced by the erroneously admitted evidence, in that the State is not required to present numerical evidence of a driver's blood alcohol level to sustain a driving while intoxicated conviction (*Pickering*, 473 S.W.3d at 704), and in light of Appellant's admissions to drinking an entire bottle of alcohol, his failures on the field sobriety tests, and his warnings about alcohol usage, there was ample evidence to convict.

There is no question that had the Datamaster results been excluded at trial, a reasonable jury theoretically could have returned a verdict of guilty based on the other incriminating evidence, including Trooper Hillyer's observations, the results of the field sobriety tests, and the Appellant's admissions. *Id.* As stated above, while a blood alcohol test revealing a blood alcohol level greater than 0.08 would supply ample proof to meet the requirements of the statute, such a scientific test is unnecessary for a jury to convict. *Id.*

However, the question before us per our standard of review is whether the erroneously admitted evidence had a material effect on the outcome of the trial. *Murrell v. State*, 215 S.W.3d 109-110. The Datamaster results showed the Appellant had a blood alcohol level of 0.206, over two-and-one-half times the legal limit, a point the State hammered home in its closing argument:

> The Judge gave you an instruction that there's a presumption if the alcohol is over the 0.08 number. 0.08 – 0.206. And, I believe my co-counsel referred to that as, "double-drunk, two-and-a-half times." That is two-and-a-half times over what the State law says you are legal to drive a motor vehicle. This one isn't even close, Ladies and Gentlemen.

We will only find the improper admission of evidence in a driving while intoxicated case to be harmless if there is other overwhelming evidence of guilt, or if the improper evidence is cumulative or is not highlighted by the State. *State v. Rose*, 86 S.W.3d 90, 103 (Mo. App. W.D. 2002). Here, the State clearly highlighted the Datamaster results in closing argument.

Additionally, the record demonstrates the jury actually relied on the Datamaster results in reaching its decision. The jury sent a message to the Bailiff requesting the trial court to "please send a copy of the actual [blood alcohol] Analysis ticket from the traffic stop." Finally, the Datamaster results were highly persuasive due to the statutory presumption created by section 577.037.1 and .4. Therefore, under the circumstances of this case, we find the improper admission of such conclusive, scientific evidence was highly prejudicial, it likely influenced the jury's verdict, and there is little question it had a material effect of the outcome of the trial.

Based on the foregoing, the trial court abused its discretion in admitting blood alcohol test results from the Datamaster because it was not calibrated in conformance with the version of 19 CSR 25-30.051(2) in effect at the time of Appellant's arrest. Point one is granted.

**B.      Mistrial**

In his second point on appeal, Appellant claims the trial court erred in not granting him a mistrial when the State solicited testimony from Trooper Hillyer regarding Appellant's inability to produce his driver's license, even after the trial court ruled such testimony was inadmissible.[9] Because we hold Appellant is entitled to a new trial as the result of point one, we need not decide this issue.

### III.      CONCLUSION

The trial court's judgment entered in accordance with the jury's guilty verdict is reversed and remanded for proceedings in accordance with this opinion.

_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., and
James M. Dowd, J., concur.

---

[9] Our holding should not be read to indicate our agreement with the trial court's ruling excluding such evidence. This question is not before us on appeal, and this case will be remanded for a new trial due to Appellant's first point on appeal.