In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

STATE OF MISSOURI, ) No. ED108967
 )
 Respondent, ) Appeal from the Circuit Court
 ) of Cape Girardeau County
 vs. ) 19BO-CR00019-02
 )
SHAWN W. YOUNT, ) Honorable Benjamin F. Lewis
 )
 Appellant. ) Filed: September 28, 2021

 Shawn W. Yount (“Defendant” or “Defendant Shawn Yount”) appeals the judgment,

following a jury trial, convicting him of four counts of the class D felony of second-degree

burglary (Counts I, IV, Counts V, and VI).1 See section 569.170 RSMo 2016.2 The trial court

sentenced Defendant to a total of thirty years of imprisonment. The trial court’s sentence was

based on, (1) the court’s finding that Defendant was a dangerous offender, and therefore,

Defendant should receive an enhanced sentence on each count; (2) the court’s finding that

Defendant’s enhanced sentence for each count should be a term of imprisonment of fifteen years,

which is the maximum level of punishment for a class B felony3; and (3) the court’s decision to

order Defendant’s fifteen-year sentences for Counts I and IV to run concurrently with each other,

1
 Defendant was charged with a total of six counts of second-degree burglary, but the jury found him not guilty of
Counts II and III.
2
 All references to section 569.170 are to RSMo 2016, which is the version of the statute effective from January 1,
2017 to the present.
3
 See section 558.011.1(2) RSMo 2016 (providing the range of punishment for a class B felony is five to fifteen
years of imprisonment). All references to section 558.011 are to RSMo 2016, which is the version of the statute
effective from January 1, 2017 to August 27, 2021.
Defendant’s fifteen-year sentences for Counts V and VI to run concurrently with each other, and

the fifteen-year period for Counts I and IV to run consecutively with the fifteen-year period for

Counts V and VI.

 Defendant raises a total of four points on appeal, which this Court considers in the

following order. In his third and fourth points, Defendant challenges the trial court’s admission

of Detective Garry Brady’s testimony pertaining to text messages implicating Defendant in the

burglaries. In his first and second points, Defendant raises two arguments pertaining to his

sentence. Specifically, Defendant asserts, (1) the trial court improperly found Defendant was a

dangerous offender under sections 558.016 and 558.021, and, (2) alternatively, if this Court

holds the trial court properly sentenced Defendant as a dangerous offender under sections

558.016 and 558.021, the trial court nevertheless improperly enhanced Defendant’s sentence to

the punishment level for a class B felony instead of a class C felony for each of his second-

degree burglary convictions.

 For the reasons set forth in detail below, we would hold the following. Because we

would find that the trial court did not err in admitting Detective Brady’s testimony pertaining to

text messages implicating Defendant in the burglaries, we would deny Defendant’s third and

fourth points on appeal and affirm the portion of the trial court’s judgment convicting Defendant

of four counts of second-degree burglary.

 Additionally, because this Court would find merit to Defendant’s argument in his first

point on appeal that the trial court improperly sentenced Defendant as a dangerous offender

under sections 558.016 and 558.021, we would reverse the portion of the trial court’s judgment

sentencing Defendant as a dangerous offender and remand for resentencing with instructions to

the trial court to impose a sentence on Defendant for each second-degree burglary count in

Counts I, IV, V, and VI consistent with the range of punishment for a class D felony set out in

 2
section 558.011.1(4), which is “a term of years not to exceed seven years.”5 However, due to the

general interest and importance of the issue involved in Defendant’s first point on appeal –

specifically the existence of a conflict between the plain meaning of section 558.016.4 and the

language in Note on Use No. 4 to Missouri Approved Charges-Criminal 2d 2.30 (“MACH-CR

2.30”)6 with respect to what is required to establish dangerous-offender status – we transfer this

case to the Supreme Court of Missouri pursuant to Missouri Supreme Court Rule 83.02 (2021).7

 I. BACKGROUND

 In November 2019, Defendant was charged with six counts of the class D felony second-

degree burglary. See section 569.170. A jury trial subsequently took place, and Defendant was

convicted of four of the six counts (Counts I, IV, Counts V, and VI). The trial court then

sentenced Defendant as a dangerous offender to a total of thirty years of imprisonment. The

relevant details pertaining to Defendant’s trial and sentence are explained below.

A. Relevant Evidence Presented at Defendant’s Jury Trial Pertaining to Defendant’s
 Four Second-Degree Burglary Convictions and Subsequent Procedural Posture

 Defendant’s four second-degree burglary convictions relate to a series of break-ins

occurring at four different locations in Bollinger County, Missouri. First, on December 17,

2018, there was a break-in at the New Salem Baptist Church. It appeared nothing was stolen.

The church’s surveillance camera captured a photo of a man wearing a heavy black coat and a

sock cap during the break-in. Then, on January 15, 2019, there was a break-in at the Missouri

Farm Bureau Office. Cash, gift cards, and stamps were stolen. Later that same date, the office

5
 As discussed below, the State concedes error with respect to Defendant’s second point on appeal claiming that if
this Court holds the trial court properly found Defendant was a dangerous offender, the trial court nevertheless
improperly enhanced Defendant’s sentence to the punishment level for a class B felony instead of a class C felony
for each of his second-degree burglary convictions. However, because we would hold the trial court erred in finding
Defendant was a dangerous offender, and thus grant his first point on appeal, we dismiss Defendant’s second point
on appeal as moot.
6
 All references to MACH-CR 2.30 are to Missouri Approved Charges-Criminal 2d (effective from January 1, 2017
to the present).
7
 All references to Rules are to Missouri Supreme Court Rules (2021).
 3
of the Welker Drilling Company was broken into. Nothing was taken. Finally, on January 17,

2019, the Leopold Post Office was broken into, and $1,124.51 in postal property and cash was

stolen.

 A suspicious vehicle was identified from video footage of businesses near the burglaries.

Officers ran the vehicle’s license plates and discovered it was registered to Sidney Scowden.

When Scowden was questioned, she admitted she had acted as Defendant’s driver and dropped

him off at various locations in the area to commit burglaries.

 Scowden told police Defendant communicated with her using two different cell phones.

She admitted Defendant would use these phones to give her instructions for picking him up and

dropping him off. Officers obtained Scowden’s cell phone and downloaded the information

stored on it. At trial, Detective Garry Brady testified there were hundreds of text messages on

Scowden’s cell phone from the two cell phone numbers Scowden identified as Defendant Shawn

Yount’s, and some of those text messages were signed “Shawn Yount[.]” Moreover, some of the

messages corroborated Scowden’s assertions that she acted as Defendant’s driver. Scowden

testified she was unaware of anyone else besides Defendant who communicated with her using

the two relevant cell phones and phone numbers. Additionally, Detective Brady testified that

when he interviewed Defendant, he asked Defendant for his cell phone number and Defendant

provided one of the phone numbers identified by Scowden as belonging to Defendant.

 At trial, Detective Brady was asked to read text messages between Scowden and

Defendant that implicated Defendant in the burglaries. Defense counsel objected on the basis of

hearsay, and the trial court overruled the objection.

 Scowden testified Defendant wore a large black coat, a sock cap, gloves, and white

Velcro shoes when he committed burglaries. Scowden also identified the man in the surveillance

photo from New Salem Baptist Church as Defendant. The police searched Defendant’s home

 4
and found a piece of paper in his bedroom with Sidney Scowden’s phone number on it, a black

puffy coat, gift cards, and stamps. Additionally, officers found a note in Defendant’s mother’s

bedroom that read, “[W]ent with Sidney. If you need me call [cell phone number].” The number

in the note was consistent with one of the numbers Scowden identified as belonging to

Defendant. Scowden also testified that Defendant told her he needed to get rid of his shoes, and

officers later found white Velcro shoes abandoned in a ditch.

 After hearing the above evidence, the jury found Defendant guilty of four counts of

second-degree burglary.

B. Relevant Procedural Posture Relating to Defendant’s Sentence and this Appeal

 In the State’s amended information charging Defendant with six counts of second-degree

burglary, the State alleged Defendant was a “dangerous offender” because: “Defendant has been

found guilty of a dangerous felony as follows: on or about June 21, 1994, [D]efendant was found

guilty of the felony of kidnapping in the Circuit Court of Cape Girardeau County, Missouri, and

such felony was a dangerous felony as defined in [s]ection 556.061(19) [ ] RSMo [2016].”8

Additionally, a copy of Defendant’s 1994 felony kidnapping conviction was admitted into

evidence before the trial court without objection.

 After the jury found Defendant guilty of four counts of second-degree burglary (Counts I,

IV, Counts V, and VI), the trial court held a sentencing hearing, and the court entered its

judgment in accordance with the jury’s verdicts and sentencing Defendant to a total of thirty

years of imprisonment. The trial court’s sentence was based on, (1) the court’s finding that

Defendant was a dangerous offender, and therefore, Defendant should receive an enhanced

sentence on each count; (2) the court’s finding that Defendant’s enhanced sentence for each

8
 All references to section 556.061 are to RSMo 2016, which is the version of the statute effective from January 1,
2017 to August 27, 2020.
 5
count should be a term of fifteen years, which is the maximum level of punishment for a class B

felony9; and (3) the court’s decision to order Defendant’s fifteen-year sentences for Counts I and

IV to run concurrently with each other, Defendant’s fifteen-year sentences for Counts V and VI

to run concurrently with each other, and the fifteen-year period for Counts I and IV to run

consecutively with the fifteen-year period for Counts V and VI.

 Defendant now appeals the trial court’s judgment convicting him of four counts of

second-degree burglary and sentencing him to a total of thirty years of imprisonment.

 II. DISCUSSION

 Defendant raises a total of four points on appeal, which we will consider in the following

order. In Defendant’s third and fourth points on appeal, he challenges the trial court’s admission

of Detective Brady’s testimony pertaining to text messages implicating Defendant in the

burglaries. In Defendant’s first and second points on appeal, Defendant raises two arguments

pertaining to his sentence.

A. Defendant’s Challenges to the Trial Court’s Admission of Portions of Detective
 Brady’s Testimony
 We will first discuss Defendant’s third and fourth points on appeal, in which he

challenges the trial court’s admission of Detective Brady’s testimony pertaining to text messages

implicating Defendant in the burglaries.

 1. Defendant’s Third Point on Appeal

 In Defendant’s third point on appeal, he argues the trial court erred in admitting Detective

Brady’s testimony about text messages between Defendant and Sidney Scowden (Defendant’s

driver during the burglaries) into evidence at trial because the State did not lay a proper

foundation for the admission of the evidence.

9
 See section 558.011.1(2) (providing the range of punishment for a class B felony is five to fifteen years of
imprisonment).
 6
 a. Relevant Facts

 At Defendant’s trial, Detective Brady testified about a series of text messages between

Defendant and Scowden. Defense counsel objected to this portion of Detective Brady’s

testimony, arguing the text messages contained inadmissible hearsay, and the trial court

overruled the objection. Detective Brady went on to testify about messages sent by Defendant to

Scowden that were consistent with Defendant Shawn Yount using Scowden as a driver. The

messages went back several months, and some were signed “Shawn Yount[.]”

 Detective Brady also testified about text messages sent by Defendant to Scowden after

Scowden had agreed to work with the police. The text messages were sent at approximately 2:30

a.m. on January 28, 2019 (eleven days after the last burglary occurred) and appear to imply that

Defendant was aware Scowden was acting as an informant. Specifically, Detective Brady

testified about a message that read: “I told you they weren’t going to stop us. It would be well

after I drop you off [sic].” Detective Brady also testified about another text Scowden received

from Defendant a few minutes later that read: “[y]ou’ve got enough to show them. You put in

your effort, but I don’t want you to think that I’m coming up short, but I’m not stupid. I’ve been

tracked before. Have you heard back from him?” Finally, Detective Brady testified about

additional text messages Defendant sent to Scowden later that same day. The messages insult

Scowden and her family, and appear to be an attempt to intimidate Scowden into silence.

 b. Standard of Review for Defendant’s Third Point on Appeal

 At trial, defense counsel objected to the above portion of Detective Brady’s testimony at

issue in this point on the basis that the text messages contained inadmissible hearsay. To

preserve an objection to evidence for review, the point raised on appeal must be on the same

basis as the objection made at trial. State v. Knese, 985 S.W.2d 759, 766 (Mo. banc 1999); see

also State v. White, 466 S.W.3d 682, 686 (Mo. App. E.D. 2015). Because Defendant’s argument

 7
on appeal asserts Detective Brady’s testimony was admitted without adequate foundation,

Defendant’s third point on appeal is not preserved. See id. Therefore, this Court will exercise its

discretionary authority under Rule 30.20 and review Defendant’s third claim for plain error. See

Rule 30.20; see also State v. Whittier, 591 S.W.3d 19, 25-27 (Mo. App. E.D. 2019) (reviewing

an improperly preserved claim of inadequate foundation for the admission of evidence for plain

error); but see State v. Tisius, 362 S.W.3d 398, 407 (Mo. banc 2012) (declining to review an

improperly preserved claim of inadequate foundation for the admission of evidence for plain

error).

 Under plain-error review, we will only grant a defendant relief if we find an error

occurred, which affected his rights so substantially that a manifest injustice or miscarriage of

justice resulted. State v. McKay, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Plain errors are

those which are evident, obvious, and clear, and our Court determines whether such errors exist

based on the circumstances of each case. Id. at 304-05. The defendant has the burden of

demonstrating a manifest injustice or miscarriage of justice resulted from the alleged error. Id. at

304.

 c. Analysis of Defendant’s Third Point on Appeal

 In this case, Defendant argues that because Detective Brady could not state with certainty

that the text messages on Scowden’s phone were actually sent by Defendant, the text messages

were unauthenticated and thus improperly admitted into evidence. Defendant correctly notes

that a mere signature on a text message is insufficient, on its own, to establish that the signature

reflects the true author of the message. See State v. Harris, 358 S.W.3d 172, 175 (Mo. App. E.D.

2011). However, text messages may be authenticated if the proponent of the evidence presents

some proof, whether direct or circumstantial, that the messages were authored by the person who

allegedly sent them. Id. In Harris, this Court held a proponent of evidence can circumstantially

 8
prove authorship and authentication of text messages by presenting evidence of, inter alia, (1) an

admission by the purported author that he actually sent the relevant messages or an admission by

the purported author that the number from which the message was received was his phone

number; (2) testimony from the person who received the text message that she regularly receives

messages from the author from that phone number; or (3) a personalized signature on the text

message or some other distinct, personal identifier (collectively “the three relevant categories of

text-message-authentication evidence under Harris”). Id.

 In this case, the State presented evidence of each of the three relevant categories of text-

message-authentication evidence under Harris: Defendant admitted one of his cell phone

numbers was associated with the text messages Scowden received; Scowden testified she

regularly received text messages and phone calls from Defendant from both of the identified

phone numbers; and some of the text messages had a personalized signature bearing Defendant’s

name. See id. Moreover, in multiple instances, the context of the text messages combined with

other evidence implicating Defendant in the burglaries circumstantially proved Defendant

authored the text messages in question. For example, several of the text messages concerned

plans for Scowden to give Defendant a ride, and Scowden’s testimony coupled with

photographic evidence showed that Scowden did in fact drive Defendant to the locations

contemplated in the text messages. Additionally, a piece of paper was found in Defendant’s

mother’s bedroom reading, “[i]f you need me call [cell phone number][,]” and the number in the

note was consistent with one of the numbers identified as belonging to Defendant.

 Based on the foregoing, we would hold the State introduced sufficient circumstantial

evidence authenticating the text messages and proving they were authored by Defendant.

Therefore, the trial court did not plainly err in admitting Detective Brady’s testimony about text

messages between Defendant and Scowden into evidence at trial. Point three is denied.

 9
 2. Defendant’s Fourth Point on Appeal

 In Defendant’s fourth point on appeal, he contends the trial court erred in admitting

Detective Brady’s testimony about text messages between Scowden (Defendant’s driver) and an

unidentified third person into evidence.

 a. Relevant Facts

 At trial, Detective Brady testified that at 2:10 a.m. on January 15, 2021 (the same date of

two of the break-ins underlying two of Defendant Shawn Yount’s charges), Scowden texted an

unidentified third person: “[K]iss my baby for me. I think Shawn got caught. Been an hour since

cop passed headed this way [sic]. In a few I’m going to drive by to check. I will keep you posted.

Don’t call yet. Love you so much.” Defense counsel did not object or move to strike this

testimony. The prosecutor then asked Detective Brady if there were any other conversations of

interest between Scowden and this unidentified third person. At that point, defense counsel

objected on the basis of hearsay, and the trial court sustained the objection.

 b. Standard of Review and Relevant Law for Defendant’s Fourth Point
 on Appeal

 In order for an objection to be preserved for appellate review, the party must make a

timely objection or a timely motion to strike the offending testimony. State v. Blurton, 484

S.W.3d 758, 774 (Mo. banc 2016). An objection is timely if it is “made at the earliest possible

opportunity to allow the trial court to invoke remedial remedies.” Id. Because defense counsel

did not object to Detective Brady’s testimony regarding the statements at issue in this point until

after Brady had already testified about them at some length, counsel’s eventual hearsay objection

was untimely. See id. Moreover, defense counsel never moved to strike Brady’s testimony

about Scowden’s statements to the unidentified third party. Therefore, Defendant’s fourth point

is not preserved for appellate review. See id. Thus, this Court will exercise its discretionary

authority under Rule 30.20 and review Defendant’s fourth point for plain error. See Rule 30.20;
 10
see also State v. Jones, 530 S.W.3d 525, 528-29, 533-34 (Mo. App. E.D. 2017) (holding that

properly preserving an issue for appeal requires a party to make a timely and specific objection at

trial and reviewing an unpreserved claim for plain error).

 Under plain-error review, we will only grant a defendant relief if we find an error

occurred, which affected his rights so substantially that a manifest injustice or miscarriage of

justice resulted. McKay, 411 S.W.3d at 304. Plain errors are those which are evident, obvious,

and clear, and our Court determines whether such errors exist based on the circumstances of each

case. Id. at 304-05. The defendant has the burden of demonstrating a manifest injustice or

miscarriage of justice resulted from the alleged error. Id. at 304.

 “Error in admitting evidence is not prejudicial requiring reversal unless it is outcome-

determinative.” State v. Washington, 260 S.W.3d 875, 880-81 (Mo. App. E.D. 2008) (finding

that, regardless of whether the testimony in question was hearsay, there was no plain error

because the defendant would have been convicted even without the admission of the alleged

hearsay testimony and thus the error was harmless and not outcome-determinative). When

determining whether the admission of alleged hearsay testimony is outcome-determinative under

a plain-error standard of review, one factor to be considered is “whether there was overwhelming

evidence of [the] [d]efendant’s participation in the charged crimes.” State v. Bowens, 550

S.W.3d 84, 104 (Mo. App. E.D. 2018). In other words, if this Court finds the jury would have

rendered the same verdict even without the admission of the purported hearsay statements, a

defendant is not entitled to plain-error relief. See id.

 c. Analysis of Defendant’s Fourth Point on Appeal

 Here, the State presented a substantial amount of evidence to establish Defendant’s

participation in the charged crimes in addition to Detective Brady’s alleged hearsay testimony

regarding Scowden’s statements, such as, inter alia, (1) photographs of Defendant at one of the

 11
crime scenes and in Scowden’s car, which she admitted she used to drive Defendant to commit

the robberies; (2) evidence that Defendant owned the clothing that the burglar was photographed

wearing; (3) evidence showing Defendant possessed the items stolen from the burglarized

locations in his home; and (4) Defendant’s own statements to Scowden where he asked her to

drive him to the various burglarized places.

 Under these circumstances, we conclude from the record that the jury would have

rendered the same verdict even if Scowden’s out-of-court statements had not been admitted into

evidence. Therefore, regardless of whether or not the disputed testimony contained inadmissible

hearsay, no manifest injustice or miscarriage of justice resulted from the trial court’s admission

of the challenged portion of Detective Brady’s testimony. Point four is denied.

B. Defendant’s Arguments Pertaining to his Sentence

 We next turn to Defendant’s arguments pertaining to his sentence set forth in Defendant’s

first and second points on appeal.

 1. Defendant’s First Point on Appeal

 In Defendant’s first point on appeal, he argues the trial court improperly sentenced

Defendant as a dangerous offender under sections 558.016 and 558.021 because the State failed

to plead all essential facts or introduce evidence at trial that established sufficient facts to warrant

a finding that Defendant was a dangerous offender. Therefore, Defendant argues, the trial court

did not have statutory authority to find that Defendant is a dangerous offender.

 a. Standards of Review and General Law for Defendant’s First Point on
 Appeal

 Defendant concedes this point was not properly preserved for appellate review because

defense counsel did not object to Defendant’s sentence on the basis that the State failed to

properly plead or prove Defendant’s alleged dangerous-offender status when the trial court found

that Defendant was a dangerous offender. Similarly, defense counsel failed to object on this
 12
basis when the trial court announced Defendant’s sentence. Therefore, this Court will exercise

its discretionary authority under Rule 30.20 and review Defendant’s first point for plain error.

See Rule 30.20; see also Jones, 530 S.W.3d at 528-29, 533-34 (holding that properly preserving

an issue for appeal requires a party to make a timely and specific objection at trial and reviewing

an unpreserved claim for plain error).

 Under plain-error review, we will only grant a defendant relief if we find an error

occurred, which affected his rights so substantially that a manifest injustice or miscarriage of

justice resulted. McKay, 411 S.W.3d at 304. Plain errors are those which are evident, obvious,

and clear, and our Court determines whether such errors exist based on the circumstances of each

case. Id. at 304-05. The defendant has the burden of demonstrating a manifest injustice or

miscarriage of justice resulted from the alleged error. Id. at 304. “Being sentenced to a

punishment greater than the maximum sentence for an offense constitutes plain error resulting in

manifest injustice.” State v. Severe, 307 S.W.3d 640, 641-45 (Mo banc. 2010) (holding the trial

court plainly erred by improperly sentencing the defendant as a persistent offender to an

enhanced term of years of imprisonment).

 Furthermore, statutory interpretation is an issue of law an appellate court reviews de

novo. State v. Richey, 569 S.W.3d 420, 423 (Mo. banc 2019). “When interpreting a statute, each

word, clause, sentence, and section of a statute should be given meaning.” Id. (internal

quotations and citation omitted).

 Sections 558.016.1(1) and 558.016.7 authorize an enhanced sentence for certain felony

criminal offenses committed by a “dangerous offender.”10 See section 558.016.1 (providing

“[t]he court may sentence a person to an extended term of imprisonment if: (1) [t]he defendant is

10
 The statutory definition of “dangerous offender” and the plain and ordinary meaning of the term is explained
below in Section II.B.1.b. of this opinion.
 13
. . . a dangerous offender”); section 558.016.7 (stating “[t]he court shall sentence a person, who

has been found to be a . . . dangerous offender, and is found guilty” of a class B, C, D, or E

felony to the authorized term of imprisonment for the offense that is one class higher than the

offense for which the person is found guilty”).

 Additionally, section 558.021.1 establishes the procedural mechanism for a trial court to

sentence a defendant to an enhanced term as a dangerous offender, providing in relevant part:

 The court shall find the defendant to be a . . . dangerous offender . . . if:

 (1) The indictment or information . . . pleads all essential facts warranting a finding
 that the defendant is a . . . dangerous offender . . . ; and

 (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a
 finding beyond a reasonable doubt that the defendant is a . . . dangerous offender
 . . . and;

 (3) The court makes finding of fact that warrant a finding beyond a reasonable
 doubt by the court that the defendant is a . . . dangerous offender . . ..

 Moreover, for a jury trial, section 558.021.2 provides the essential facts which warrant a

finding that a defendant is a dangerous offender (“the facts as to dangerous-offender status”)

must be pleaded, established, and found prior to sentencing. See section 558.021.2. The statute

also specifically provides the facts as to dangerous-offender status, (1) must be “pleaded . . .

prior to submission to the jury outside of its hearing”; (2) “may be established and found [after

submission to the jury], but prior to sentencing”; and (3) “may be established by judicial notice

of prior testimony before the jury.” See section 558.021.2; see also section 558.016.4.

 Importantly, although the facts as to dangerous-offender status may be established and

found after submission to the jury, “it does not dispense with the necessity that the indictment or

information ‘pleads all essential facts warranting a finding that the defendant is a . . . dangerous

offender,’ or the requirement that ‘[e]vidence [be] introduced that establishes sufficient facts

pleaded to warrant a finding beyond a reasonable doubt that the defendant is a . . . dangerous

 14
offender.’” State v. Libertus, 496 S.W.3d 623, 629 (Mo. App. W.D. 2016) (quoting section

558.021.1) (emphasis omitted) (bracketed alterations in Libertus).

 b. The Facts as to Dangerous-Offender Status that Must be Pleaded and
 Proven by the State Before a Trial Court May Find a Person is a
 Dangerous Offender and the State’s Argument on Appeal

 The facts as to dangerous-offender status that must be pleaded and proven by the State

before a trial court may find a person is a dangerous offender are found in section 558.016.4, i.e.,

the substantive law. See section 558.016.4; see also State v. Welch, 600 S.W.3d 796, 810 (Mo.

App. E.D. 2020) and State v. Derennaux, 535 S.W.3d 395, 401 (Mo. App. S.D. 2017) and State

v. Dominguez–Rodriguez, 471 S.W.3d 337, 343 (Mo. App. E.D. 2015) (all similarly

characterizing a criminal statute as the “substantive law”).

 Section 558.016.4 defines a “dangerous offender” as a person who:

 (1) Is being sentenced for a felony during the commission of which he knowingly
 murdered or endangered or threatened the life of another person or knowingly
 inflicted or attempted or threatened to inflict serious physical injury on another
 person; and

 (2) Has been found guilty of a class A or B felony or a dangerous felony.

(emphasis added).

 The Missouri Supreme Court has held the ordinary meaning of the word “and” is “‘along

with or together with’ or words of comparable meaning.” Stiers v. Director of Revenue, 477

S.W.3d 611, 615 (Mo. banc 2016) (citation omitted); see also State v. Mattix, 482 S.W.3d 870,

874 (Mo. App. E.D. 2016) (similarly characterizing Stiers, 477 S.W.3d at 614-15). Moreover,

the term “and” “can only be used to mean ‘or’ and provide alternatives where ‘it must be done in

order to effectuate the manifest intention of the user; and where not to do so would render the

meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a

mistake.’”

 15
Mattix, 482 S.W.3d at 874 (quoting the Missouri Supreme Court’s decision in Stiers, 477 S.W.3d

at 614-15 (quoting Hawkins v. Hawkins, 511 S.W.2d 811, 813 (Mo. 1974)).

 In this case, because nothing in section 558.016.4 requires “and” to be given anything but

its ordinary, conjunctive meaning, we would hold the statute requires the State to plead and

prove the facts in both subsections of the statute. See id.; Stiers, 477 S.W.3d at 615 and Mattix,

482 S.W.3d at 874 (similarly holding with respect to the word “and” in a regulation); Hawkins,

511 S.W.2d at 813 (similarly holding with respect to the word “and” in a statute). Accordingly,

we would hold that before a trial court may find a person is a dangerous offender, the facts as to

dangerous-offender status that must be pleaded in the State’s charging instrument and proven by

the State’s evidence beyond a reasonable doubt are that: “(1) [the person] [i]s being sentenced

for a felony during the commission of which he knowingly murdered or endangered or

threatened the life of another person or knowingly inflicted or attempted or threatened to inflict

serious physical injury on another person; and [, i.e., along with or together with] (2) [the person]

[h]as been found guilty of a class A or B felony or a dangerous felony.” See section

558.016.4(1)-(2) (emphasis added); Stiers, 477 S.W.3d at 615; Hawkins, 511 S.W.2d at 813;

Mattix, 482 S.W.3d at 874; see also Libertus, 496 S.W.3d at 629 (citing to section 558.021.1).

 The State urges this Court to ignore the plain meaning of the language in section

558.016.4(1)-(2) and interpret the word “and” joining the subsections one and two of the statute

as a disjunctive, meaning “or” and “in the alternative”” rather than “along with or together with.”

In support of this argument, the State primarily relies on MACH-CR 2.30 Note on Use No. 4,

which states: “The punishment range for a ‘dangerous offender’ may be enhanced either due to

prior convictions or because defendant’s conduct in committing the present felony endangered or

threatened the life of another person.” (emphasis added); see also Libertus, 496 S.W.3d at 629-

30 (finding the language in this Note on Use to be “extremely persuasive”).

 16
 While the State correctly notes that its interpretation of section 558.016.4(1)-(2) is

supported by MACH-CR 2.30 Note on Use No. 4, we would hold the language in the Note on

Use indicating the State does not have to plead and prove both subsections of section 558.016.4

before a trial court can find a person is a dangerous offender is not binding because it conflicts

with the plain and ordinary meaning of section 558.016.4, i.e., the substantive law. See section

558.016.4; State v. Celis-Garcia, 344 S.W.3d 150, 158 (Mo. banc 2011) (“[t]o the extent

[Missouri Approved Instructions-Criminal] and its notes on use conflict with th[e] substantive

law, they are not binding”) (citation omitted); see also State v. Bailey, 760 S.W.2d 122, 124 (Mo.

banc 1988) and State v. Rice, 597 S.W.3d 322, 327 (Mo. App. E.D. 2019) (collectively holding

the Missouri Approved Charges-Criminal and the Missouri Approved Instructions-Criminal have

both been adopted by the Missouri Supreme Court); Welch, 600 S.W.3d at 810 and Derennaux,

535 S.W.3d at 401 and Dominguez–Rodriguez, 471 S.W.3d at 343 (all similarly characterizing a

criminal statute as the “substantive law”). However, due to the general interest and importance

of the issue involved in Defendant’s first point on appeal – specifically the existence of a conflict

between the plain meaning of section 558.016.4 and the language in MACH-CR 2.30 Note on

Use No. 4 with respect to what is required to establish dangerous-offender status – we transfer

this case to the Supreme Court of Missouri pursuant to Rule 83.02.

 c. Analysis of Defendant’s First Point on Appeal

 As previously stated, we would hold that before a trial court may find a person is a

dangerous offender, the facts as to dangerous-offender status that must be pleaded in the State’s

charging instrument and proven by the State’s evidence beyond a reasonable doubt are that: “(1)

[the person] [i]s being sentenced for a felony during the commission of which he knowingly

murdered or endangered or threatened the life of another person or knowingly inflicted or

attempted or threatened to inflict serious physical injury on another person; and [, i.e., along with

 17
or together with] (2) [the person] [h]as been found guilty of a class A or B felony or a dangerous

felony.” See section 558.016.4(1)-(2) (emphasis added); Stiers, 477 S.W.3d at 615; Hawkins,

511 S.W.2d at 813; Mattix, 482 S.W.3d at 874; see also Libertus, 496 S.W.3d at 629 (citing to

section 558.021.1).

 In this case, the State sufficiently pleaded and proved the facts as to dangerous-offender

status found in section 558.016.4(2), i.e., that “[Defendant] [h]as been found guilty of a class A

or B felony or a dangerous felony.” Specifically, the State’s amended information alleged: “on

or about June 21, 1994, [D]efendant was found guilty of the felony of kidnapping in the Circuit

Court of Cape Girardeau County, Missouri, and such felony was a dangerous felony as defined

in [s]ection 556.061(19) . . ..” See section 556.061(19) (defining a “[d]angerous felony” to

include, inter alia, “the felon[y] of . . . kidnapping”) (emphasis omitted). Additionally, a copy of

Defendant’s 1994 felony kidnapping conviction was admitted into evidence before the trial court

without objection.

 However, the State failed to plead or prove the facts as to dangerous-offender status

found in section 558.016.4(1) because the State’s amended information did not allege any of

Defendant’s burglary charges constituted “a felony during the commission of which he

knowingly murdered or endangered or threatened the life of another person or knowingly

inflicted or attempted or threatened to inflict serious physical injury on another person”; instead,

the State’s amended information merely accused Defendant of unlawful entry into various

inhabitable structures for the purpose of committing theft. See section 556.016.4(1). Similarly,

the State did not introduce evidence establishing sufficient facts to warrant a finding beyond a

reasonable doubt that Defendant’s burglary charges constituted “a felony during the commission

of which he knowingly murdered or endangered or threatened the life of another person or

 18
knowingly inflicted or attempted or threatened to inflict serious physical injury on another

person.” See id.

 Under these circumstances, we would hold the trial court plainly erred in finding

Defendant was a dangerous offender and sentencing him to an enhanced term of years of

imprisonment under sections 558.016 and 558.021. See Severe, 307 S.W.3d at 641-45 (holding

that “[b]eing sentenced to a punishment greater than the maximum sentence for an offense

constitutes plain error resulting in manifest injustice” and that the trial court plainly erred by

improperly sentencing the defendant as a persistent offender to an enhanced term of years of

imprisonment). Defendant’s first point on appeal is granted.

 2. Defendant’s Second Point on Appeal

 In his second point on appeal, Defendant argues that if this Court holds the trial court

properly found Defendant was a dangerous offender, the trial court nevertheless improperly

enhanced Defendant’s sentence to the punishment level for a class B felony instead of a class C

felony for each of his second-degree burglary convictions.

 The State concedes error with respect to this point on appeal, acknowledging second-

degree burglary is a class D felony and, assuming Defendant was properly found to be a

dangerous offender, the trial court only had the statutory authority to enhance Defendant’s

sentence to the punishment level for a class C felony for each of his second-degree burglary

convictions. See section 569.170 (providing second-degree burglary is a class D felony); section

558.016.1 (providing “[t]he court may sentence a person to an extended term of imprisonment if:

(1) [t]he defendant is . . . a dangerous offender”); section 558.016.7 (stating “[t]he court shall

sentence a person, who has been found to be a . . . dangerous offender, and is found guilty” of a

class B, C, D, or E felony to the authorized term of imprisonment for the offense that is one class

higher than the offense for which the person is found guilty). However, because we would hold

 19
the trial court erred in finding Defendant was a dangerous offender, and thus grant his first point

on appeal, we dismiss Defendant’s second point on appeal as moot.

 III. CONCLUSION

 Based on the foregoing, because we would find the trial court did not err in admitting

Detective Brady’s testimony pertaining to text messages implicating Defendant in the burglaries,

we would affirm the portion of the trial court’s judgment convicting Defendant of four counts of

second-degree burglary.

 In addition, because this Court would find merit to Defendant’s argument in his first

point on appeal that the trial court improperly sentenced Defendant as a dangerous offender to an

enhanced term of years of imprisonment under sections 558.016 and 558.021, we would reverse

the portion of the trial court’s judgment sentencing Defendant as a dangerous offender and

remand for resentencing with instructions to the trial court to impose a sentence on Defendant for

each second-degree burglary count in Counts I, IV, V, and VI consistent with the range of

punishment for a class D felony set out in section 558.011.1(4), which is “a term of years not to

exceed seven years.” However, due to the general interest and importance of the issue involved

in Defendant’s first point on appeal – specifically the existence of a conflict between the plain

meaning of section 558.016.4 and the language in MACH-CR 2.30 Note on Use No. 4 with

respect to what is required to establish dangerous-offender status – we transfer this case to the

Supreme Court of Missouri pursuant to Rule 83.02.

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Kelly C. Broniec, J., concur.

 20