

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
         )
    Respondent, )
         )
v. )
         )
TYLER J. GATES, )
         )
    Appellant. )

*Opinion issued December 21, 2021*

No. SC98847

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Jack R. Grate, Judge

Tyler J. Gates appeals his judgment of conviction for second-degree felony murder and armed criminal action stemming from an alleged robbery during which Gates shot and killed Mathew Haylock. Gates claims he did not rob Haylock but, instead, shot him in self-defense after Haylock attempted to rob Gates. The circuit court denied Gates's multiple attempts to present evidence he acted in self-defense. The circuit court's evidentiary rulings prevented Gates from offering his own version of events that he did not actually rob Haylock and, as a result, infringed on his constitutional right to present a complete defense as guaranteed by the Sixth and Fourteenth Amendments. The judgment is reversed, and the case is remanded.

## Background

Gates drove Luis Ramirez to pick up Haylock so the three could go to the mall. According to Ramirez, who was the State's principal witness, Gates asked to see Haylock's handgun as they were driving to the mall and refused to return the gun once they arrived. Ramirez testified that, when Haylock reached for his gun, a struggle between Haylock and Gates ensued, and Gates ultimately shot Haylock. Gates's own version of the events starkly differed. He claimed that, once they arrived at the mall, Haylock tried to rob him by pointing his gun at Gates's face and demanding cash. According to Gates, despite numerous attempts to push Haylock's gun away, Haylock kept pointing his gun at Gates's head. Gates was prepared to testify he ultimately felt he had no choice but to shoot Haylock in self-defense.

Gates was indicted on one count of felony murder based on the underlying felony of first-degree robbery as well as one count of armed criminal action. The State moved in limine to bar Gates from injecting "any issue of self-defense throughout voir dire, opening and closing arguments, and any direct or cross examinations[,]" relying on section 563.031.1(3)[1] and *State v. Oates*, 540 S.W.3d 858 (Mo. banc 2018). Gates conceded he would not seek a self-defense instruction on the felony murder charge but insisted that "whether or not a robbery was occurring is a fact issue for the jury and we should be able to argue self-defense throughout the trial." Gates further argued that barring him from testifying about his own version of events that he did not rob Haylock

---

[1] All statutory references are to RSMo 2016, unless otherwise specified.

would deny him his constitutional right to present a complete defense. The circuit court ultimately sustained the State's motion and prohibited Gates from presenting any evidence related to self-defense.

Gates asked the circuit court to reconsider its ruling prior to voir dire, arguing it precluded him from rebutting the State's charge that he was committing a felony at the time he shot Haylock. The court maintained its prior ruling. Before opening statements, Gates again requested that the court reconsider its ruling. He argued *Oates* narrowly held that a self-defense instruction cannot be given with a felony murder count, not that the defense is barred from presenting evidence of self-defense at all. Gates also asserted he had a right to testify on his own behalf and to testify about his own version of events. In response, the court stated: "He does not have the right to undermine my ruling, that will happen on appeal if it happens at all. It won't be happening in opening statement or out of his mouth. He may not mention anything that touches on self-defense, that's the ruling of the court relentlessly." The court further declared: "Anything commonsensically that has something to do with self-defense he can't do. It's barred. That's what I think that [*Oates*] says[.]"

Before testifying, Gates made an offer of proof in which he provided the full testimony he planned to give if permitted to do so. The circuit court rejected Gates's offer of proof and ruled that, if Gates testified before the jury, "he may not mention self-defense or anything touching upon self-defense or his fear regarding his need to protect himself or something." Throughout the proceedings, Gates raised the issue of presenting

3

his own version of events on eight separate occasions. Each time Gates raised this issue, the circuit court denied him the right to provide such evidence.

The jury ultimately found Gates guilty of both counts, and the circuit court sentenced him to 20 years for felony murder and seven years for armed criminal action, with the terms to be served concurrently. Gates appeals the circuit court's judgment of conviction, challenging the circuit court's evidentiary rulings prohibiting his proffered evidence.[2]

## Standard of Review

Evidentiary rulings are typically reviewed for abuse of discretion. *State v. March*, 216 S.W.3d 663, 664 (Mo. banc 2007). But "[w]hen facts are not contested and the issue is one of law, [this Court's] review is *de novo*, and no deference is given to the trial court's determination." *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016). The question of whether a criminal defendant's constitutional rights were violated is a question of law reviewed *de novo*. *March*, 216 S.W.3d at 664-65.

## Analysis

Gates argues the circuit court's evidentiary rulings prohibiting him from presenting any evidence related to self-defense infringed on his Sixth and Fourteenth Amendment rights to present a complete defense.[3] He asserts that, as a result of these

---

[2] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.
[3] Gates also challenges the circuit court's failure to provide a self-defense instruction to the jury. Because this Court is reversing the circuit court's judgment on other grounds, that issue need not be addressed.

rulings, he was unable to provide his own version of events, which prevented him from meaningfully contesting whether he actually committed a robbery. [4]

The circuit court repeatedly denied Gates the opportunity to present his full account of the events in question. During opening statements, the defense stated, "Then they stop in the parking lot and . . . Gates turns around and he's looking at a gun." At that point, the State objected, and the following exchange took place at the bench:

> State: Your Honor, I think defense counsel is getting dangerously close to violating your rule.
>
> Circuit Court: I am too.
>
> Gates's Counsel: Your Honor, I didn't say he was fearful of his life. I'm just going to give his version of his story. I understand that was your ruling, but I can tell Mr. Tyler Gates' version of his story. . . .
>
> Circuit Court: I don't think you can say anything more about it. I think you've already overstepped.

---

[4] The State contends Gates failed to preserve the argument that his proffered evidence was necessary to contest the robbery charge against him because he failed to make that specific argument at trial. The State claims Gates instead merely argued this evidence was necessary to inject the issue of self-defense into the case and that prohibiting his proffered testimony violated his constitutional right to testify. But from the initial argument on the State's motion in limine to Gates's motion for a new trial, Gates argued his version of events was relevant to address whether or not a robbery had occurred. For example, during Gates's testimony, his counsel specifically stated, "I think this goes directly to one of the elements that the State was trying to prove. They are trying to prove that Mr. Tyler Gates was attempting to rob someone. He said while he was on the stand he was not attempting to rob anyone." While Gates's counsel also referenced Gates's right to testify and used the phrase "self-defense" to describe the nature of the evidence Gates wished to present, Gates made clear on multiple occasions that his proffered evidence was necessary to rebut the State's claim that a robbery had occurred. The circuit court clearly understood what Gates was arguing, as the court complained it had "ruled 33 times" on the issue and it was "the 13th time" Gates's counsel had requested clarification. Finding Gates failed to preserve this argument would require this Court to ignore the full context of the record and apply the law of preservation in an unreasonably technical manner. Gates's numerous attempts to secure his right to present his own account of events were sufficient to preserve his argument that such evidence was necessary to contest his robbery charge.

5

Gates's Counsel: Okay. So are you ruling I cannot tell Mr. Gates' version of the events that happened within the vehicle?

Circuit Court: You can't talk about self-defense, what I've ruled 33 times.

Gates's Counsel: I understand. Are you ruling I can't talk about Tyler Gates?

Circuit Court: No. No, you can't talk about self-defense.

Gates's Counsel: Okay. I'm not going to mention self-defense. I'm not going to mention fear for his life. I'm not going to mention he had to do, what he had to do.

Circuit Court: He's been looking at a gun. It adds up to the same thing to me. There's no point of other words than self-defense. The fact that somebody has a gun aimed on him would put him in fear, you're heading towards self-defense. There's no reason for that.

Gates's Counsel: I understand your ruling. But I just want to make clear that I'm not allowed to tell Tyler Gates' version of the events in the vehicle.

Circuit Court: That's not what I said. That's the 13th time you've asked me that. That's not what I said.

Gates's Counsel: I guess, I'm not clear on your ruling, Your Honor.

Circuit Court: You may not talk about anything about self-defense or something about fear, or something about guns pointing at people. You can't talk . . . about that.

Gates's Counsel: I believe the State has already opened the door about gun[s] pointing at people.

Circuit Court: You can't because you're heading towards self-defense.

Gates's Counsel: Just so I'm clear, Judge. So the fact that we can't go into the facts, not that Mr. Gates will testify that Mr. Haylock pulled out a gun first, and Mr. Gates then grabbed the gun and then Mr. Gates shot.

Circuit Court: None of that will come in.

Gates's Counsel: None of that. We cannot talk about any of that.

6

Circuit Court: The only purpose of any of that is to demonstrate self-defense. You're evading my ruling.

The defense was effectively forced to resume opening statements by skipping ahead to the point in time when Haylock had already been shot without fully explaining Gates's account of the events leading up to the shooting.

Later during Gates's testimony, he stated he began to feel nervous on the way to the mall. The State objected, and the circuit court instructed Gates's counsel not to invite Gates to say he was afraid. Gates resumed his testimony and stated that, after he pulled into the mall parking lot, he turned around to see a gun in his face. The State objected again, and the following exchange occurred at the bench:

State: He said he looked back and he saw a gun, that goes directly to what you told him not to say.

Gates's Counsel: I believe you said I can't say that he was fearful.

Circuit Court: No, you can't do anything [i]n the neighborhood of self-defense, including what she just said she thought you were going to do.

Gates's Counsel: Your Honor, can I ask if he thought Matthew Haylock was going to rob him?

Circuit Court: I have no reason to think that. That goes towards self-defense again. I don't know how to say it any clearer. No matter how many times you all try, I'm not going to let him defend himself with self-defense. You've made your record repeatedly.

Gates's Counsel: So, then, I would ask, Your Honor, because he's already said these events. I think this goes directly to one of the elements that the State was trying to prove. They are trying to prove that Mr. Tyler Gates was attempting to rob someone. He said while he was on the stand that he was not attempting to rob anyone.

Circuit Court: He can say that. You can ask if he was attempting to rob somebody. You can ask that.

7

Gates's counsel asked Gates if he was attempting to rob anyone during the events in question, to which he answered, "No[.]" Gates's counsel then informed the circuit court that he planned to ask Gates who shot Haylock and why. The circuit court told Gates's counsel he could ask Gates if he shot Haylock but could not ask him why. The court explained:

> You may not ask any of these questions touching on: I did this for a good reason, or I did this because I was scared, or I did this because of self-defense. I was in fear of getting robbed. You can't do any of that. If I'm wrong, I'm wrong, we'll find out in four months.

Accordingly, Gates testified that he shot Haylock without explaining why.

During closing arguments, the State told the jury, "What matters is Tyler Gates' actions after they pulled into that parking lot . . . ." But the circuit court repeatedly denied Gates the opportunity to present his own account of that timeframe to counter the version of events presented by the State.

The Supreme Court of the United States has emphasized the fundamental importance of a criminal defendant's right to present a complete defense. As the Supreme Court has explained:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."

8

*Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (internal citations omitted). A criminal defendant's right to present a complete defense includes the defendant's right to testify himself. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). "[A]n accused's right to present his own version of events in his own words" is fundamental to the fairness of a criminal proceeding, as "the most important witness for the defense in many criminal cases is the defendant himself." *Id.* Further, the State "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Id.* at 55.

The circuit court's rulings violated these fundamental constitutional principles by denying Gates the opportunity to refute the charges against him by presenting his explanation of what happened. Because Gates's felony murder charge was based on the underlying felony of first-degree robbery, whether Gates had, in fact, committed first-degree robbery was the ultimate issue in the case. According to the verdict director, to find Gates had committed first-degree robbery, the jury had to find:

> First, that . . . [Gates] took a gun, which was property in the possession of [Haylock], and
>
> Second, that [Gates] did so for the purpose of withholding it from the owner permanently, and
>
> Third, that [Gates] in doing so used physical force on or against [Haylock] *for the purpose of preventing resistance to the taking of the property*, and
>
> Fourth, that in the course of taking the property, [Gates] was armed with a deadly weapon.

9

(Emphasis added). As such, the purpose behind Gates's actions—whether he shot

Haylock to defend himself or to prevent Haylock from resisting a theft—was critical in

determining whether Gates was guilty of felony murder.

The State argued in closing that the "purpose" element of first-degree robbery was

established because the evidence purportedly showed Gates shot Haylock "because he

was going to keep [Haylock's] gun." Gates, however, was explicitly barred from

explaining his purpose for shooting Haylock. His proffered evidence would have directly

countered the State's argument because Gates asserted he shot Haylock to defend himself

from Haylock's attack, not to take Haylock's gun. But the circuit court prevented Gates

from offering this explanation to the jury. [5]

---

[5] The circuit court concluded that allowing Gates to present any evidence related to self-defense would contradict *Oates*, 540 S.W.3d 858, and render section 563.031.1(3) meaningless. But neither *Oates* nor section 563.031.1(3) required the circuit court to bar Gates from presenting his account of the events entirely. *Oates* held self-defense is not a legal defense to felony murder because "felony murder is not based on the defendant's use of force but rather the underlying felony[.]" 540 S.W.3d at 860. "In other words, *unless the underlying felony involves the defendant's use of force*, felony murder is not prosecuting the defendant's use of force." *Id.* at 862 (emphasis added). *Oates* specifically clarified that self-defense *is* an available justification when "the criminal act being prosecuted is the defendant's use of force." *Id.* at 861. The underling felony in *Oates* was a non-forcible felony. *Id.* Gates's case differs because the underlying felony was robbery, which, as discussed above, is a forcible felony. Section 563.031.1(3), however, provides that an individual may not use self-defense as a justification for the use of force against another if he or she "was attempting to commit, committing, or escaping after the commission of a forcible felony." But section 563.031.1(3) does not prohibit the admissibility of evidence and, instead, addresses the availability of a legal defense. The circuit court misinterpreted section 563.031.1(3) by ruling the statute prohibited Gates from testifying about self-defense. The statute does not prevent a criminal defendant from arguing he or she used physical force for a purpose other than committing the forcible felony for which the defendant is charged. Such a rule would be a clear violation of the defendant's constitutional rights, as a criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (alteration in original).

## Conclusion

Due to the circuit court's exclusionary rulings, the jury heard only the State's account of the events that occurred between the time Gates arrived at the mall and the moment Haylock was shot. Consequently, Gates was unable to counter the State's argument that he robbed Haylock and, therefore, was guilty of felony murder. By prohibiting Gates from presenting any evidence about the ultimate issue in his case, the circuit court prevented Gates from presenting a complete defense, in violation of his Sixth and Fourteenth Amendment rights. As such, the United States Constitution requires that the judgment be reversed and remanded. *See, e.g.*, *Crane*, 476 U.S. at 685-86.

_____
Mary R. Russell, Judge

All concur.